## 60324. HORNE v. THE STATE.

DEEN, Chief Judge.

Billy E. Horne was indicted for murder and after a trial before a jury was convicted of involuntary manslaughter.

1. Appellant contends that the trial court erred in its definition of involuntary manslaughter because it did not define the underlying "unlawful act" and that it was error to give a charge on involuntary manslaughter because such a charge was not supported by the evidence.

A verbatim charge in the language of Code Ann. § 26-1103 is not error. See *Newsome v. State,* 149 Ga. App. 415 (254 SE2d 381) (1979). It is well-established " '[w]here no point is made that the facts make a case of involuntary manslaughter, either in argument before the court or by request to charge the law thereon, the court need not instruct the jury touching that grade of homicide further than to read the sections of the Code thereon, unless the facts place such an issue prominently in the case.' " *Ray v. State,* 235 Ga. 467, 469 (219 SE2d 761) (1975). The defendant relied upon a defense of accident claiming that the victim had threatened him earlier in the day shortly after meeting him for the first time and that Way appeared at his former wife's trailer about 1:00 a.m. banging on the door and demanding to be let inside. The defendant claimed that he picked up a pistol, thought he put the safety on, and tried to hold the door shut with his left hand when the victim jerked the trailer door open and the gun discharged.

If the jury believed Horne's version of the facts, it would have found the shooting to be accidental and acquitted him. Under Code Ann. § 38-1805, the credibility of the witness is a matter for jury determination. The district attorney cross-examined Cathy Way, the victim's former wife, as to a statement which she made shortly after

the shooting in which she stated that Horne opened the door although she testified at trial that she could not remember what happened. "While the evidence may have authorized a verdict of involuntary manslaughter, it did not demand such a verdict and in the absence of a request for a more complete charge on the subject, the trial court did not err in failing to expound thereon beyond the charge given." *Ray,* supra, at 469.

The trial court also did not abuse its discretion in charging on the lesser crime. *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976). Appellant's first two enumerations of error are without merit.

2. The trial court's instructions to the jury that there were only three possible verdicts were not confusing, misleading or an inaccurate statement of the law. After the charge was given, the jury twice requested the court to define the three possible verdicts as previously charged by the court. After the second recharge, the district attorney expressed concern that the order in which the court listed the possible verdicts differed from the order in which the judge listed their deliberations and he expressed an opinion that the charge was confusing and requested a clearer recharge. The court then charged the jury: ". . . It has been called to the Court's attention that possibly there has some confusion arisen in the minds of the jury as to the sequence in which you are to consider these matters and that that has not been made clear by the Court. The Court was under the impression that when it gave you instructions that you're to first consider the charges as in the indictment, then, when you finish that then you pass on to the question of the lesser included offense. But, let me make this absolutely clear.

"In your deliberations first, you must pass on the question of whether the Defendant is guilty or not guilty of the offense of murder. Now, that's . . . you . . . you must conclude that issue first. And, of course, everything that the court has said that proof must be of every element of the crime beyond a reasonable doubt. All of this has to be shown on the offense of murder. Then, if you're . . . if that . . . if you find that he is not guilty of the offense of murder or guilty of the offense of murder, the Court has already discussed those forms of verdicts with you. You conclude that discussion, that deliberation.

"Then, if you have completed, and after and only after you have completed that deliberation to the guilt of the defendant with regard to the offense of murder or the not guilty verdict as to the offense of murder, you then move on, or you are authorized to move on, to consider the question of whether he is . . . guilty or not guilty of the lesser included offense of involuntary manslaughter. Now, it . . . in that respect, again, you would look to all of the law as given you in Charge and the burden of proof is exactly the same as always has been, that

every element of this must be proven beyond a reasonable doubt by the State. If you should . . . if . . . in considering the question of involuntary manslaughter in the commission of an unlawful act, you find the Defendant guilty, then the verdict there is what the court has already said a number of times. That would be all.

"And, if I have confused you in any way, then. . . by limiting or saying there are three forms of verdicts, what the Court is saying to you is, that before you ever got [to] the involuntary manslaughter question, you had eliminated the possibility of murder and you'd move to the involuntary manslaughter question. You can't consider involuntary manslaughter until you have resolved the question of murder. It would mean that you could not consider involuntary manslaughter unless you have concluded that he is not guilty as to murder. You could then move to the lesser included offense. You must find that he is guilty beyond a reasonable doubt then if that . . . from the evidence before you would be authorized to find guilty of involuntary manslaughter in the commission of an unlawful act.

"A simple verdict of not guilty is . . . concludes the matter in its entirety on all of it. Now, do you understand that? You don't have to say anything further if that should be your verdict. Do you understand that? Is there any further problems now?

"All right. You may return to the jury room."

This final charge clearly explains to the jurors the manner in which they were to reach their decision and that they could find the defendant guilty of murder, not guilty of murder, guilty of involuntary manslaughter, or not guilty of involuntary manslaughter. The defendant's contention that the charge only authorized the jury to find him guilty of murder, not guilty of murder or guilty of involuntary manslaughter is not supported by the record. There is nothing in the record to indicate that there was any confusion in the minds of the jurors as to how they were to reach their verdict or the form of their verdict after the final recharge. This enumeration is without merit.

3. The trial court did not err in denying appellant's motion for a directed verdict of acquittal. (The basic facts leading up to the shooting are set forth in Division 1 above.) After the shooting, the police recovered a .32 caliber revolver from the victim. A neighbor who was in a bedroom with a window open across the road did not hear any shouting or banging prior to the shooting. She testified that Horne called her about 1:00 a.m. and asked if he could park his car in her driveway, she gave him permission, and she tried to go back to sleep and could hear dogs barking and then the shot. As also stated in Division 1 above, Cathy Way was cross-examined about the statement which she gave to the police immediately after the

shooting and her inconsistent testimony at trial. The defendant also made a statement to the police after he was asked what happened: "He told me that he had a gun in his hand. He had the gun cocked. He put the safety on and when the door opened, he pointed it at the man and the gun went off." At the time of this statement, Horne made no mention of his later trial testimony that the door was snatched open and the gun went off accidentally. Appellant's assertion that no malice was proved is without merit. While it is true that express malice was not shown by the state, the evidence did authorize the jury to imply malice on the part of the appellant. See *Wilburn v. State,* 230 Ga. 675 (1) (198 SE2d 857) (1973). As appellant's initial statement which he volunteered to the police officer is somewhat inconsistent with a defense of accident, it became a question of fact to be decided by the jury as to whether murder, involuntary manslaughter or accidental homicide was the real truth of the shooting.

4. The trial court properly excluded testimony of the victim's prior violent acts towards third persons. There was no evidence that the deceased was assailing the defendant. Cathy Way testified that her former husband did not make any threats when he was banging on the trailer door; he just demanded to be let in. Assuming the victim was assailing Horne, evidence of the victim's general reputation is admissible, but his character for violence cannot be established by specific acts towards third persons. *Music v. State,* 244 Ga. 832 (262 SE2d 128) (1979). As Way had threatened Horne earlier in the day, the trial court properly limited the evidence to general reputation and excluded specific acts of violence towards persons other than appellant.

5. The trial court did not deny appellant access to evidence to which he was entitled under his Brady motion and notice to produce. Contrary to appellant's contention that the results of a blood alcohol test on the victim were not given to him, the record of the preliminary hearing held on August 3, 1979, shows that he was informed by Detective Cribbs that the results showed .11 grams percent alcohol and the record further shows that counsel signed a statement certifying that he had received a copy of the report of a blood alcohol test.

On October 1, 1979, the court held a hearing on the Brady motion and the motion to produce certain items and agreed to hold an in-camera inspection of the evidence to see if it contained anything exculpatory to the accused. On October 5, 1979, the court issued an order requiring certain listed items be furnished to defendant. Items found in the victim's truck were not included in the list. These items were certain tools, a syringe, drugs claimed to be horse tranquilizers, an empty liquor bottle, a two-thirds-full fifth of vodka, a shotgun and

a .25 caliber automatic pistol. At the hearing on the motion, the district attorney agreed to bring the items to court if he had them. Only the alcoholic beverages were available in the courtroom at trial. In response to the defendant's objection that the district attorney had failed to stand by his promise to bring the other items found in the truck, the district attorney stated that the other items were determined *not to be connected with the crime* and had been released to the victim's father prior to the filing of the notice to produce. Such a motion will not reach material not in the state's possession. *Watson v. State,* 147 Ga. App. 847 (250 SE2d 540) (1978).

Although the district attorney should have informed counsel that it did not have the items sought, we find no error because no reference was made to them during the defendant's examination of the police officer who investigated the shooting and he has failed to show how he was prejudiced by their unavailability.

6. Appellant's contention that the trial court erred in failing to charge the second page of the circumstantial evidence charge as contained in the Suggested Criminal Jury Instructions as set forth by the Judicial Council has not been supported by citation of authority or argument and is deemed to have been abandoned. Court of Appeals Rule 15 (c) (2). *Royle v. State,* 151 Ga. App. 88 (258 SE2d 921) (1979).

7. The trial court's charge that "[t]he Defendant's plea of not guilty is no evidence of his innocence" was not error when the charge is considered as a whole: "Now, there are the allegations of the indictment, ladies and gentlemen. These allegations constitute no proof of any matter, nor does the indictment itself constitute proof of any matter, except that it was returned into this court by the Grand Jury of Liberty County on the 18th day of September, 1979.

"Now, I caution you Ladies and Gentlemen, that an indictment does not constitute evidence, nor does the fact that a grand jury has returned an Indictment against the Defendant constitute any evidence or inference of guilt. It is merely the manner in which the charge is brought before the jury for trial on its merits, as revealed in your presence and hearing.

"Now, to this Indictment, the Defendant has entered his plea of not guilty. The Defendant's plea of not guilty is no evidence of his innocence. The allegations of the Bill of Indictment, together with the Defendant's plea of not guilty thereon, constitute, formulate and establish the issues which you are called upon to try, and, by your verdict, to determine, namely, whether the defendant is guilty or innocent of the crime of murder, as charged in the Indictment."

We do not find that the charge taken as a whole is either misleading or constitutes an impermissible comment on the guilt or

innocence of the defendant. See *State Hwy. Dept. v. Davis,* 129 Ga. App. 142 (199 SE2d 275) (1973). It might, however, have been preferable for the trial court to use the charge from the Judicial Council's Suggested Criminal Instructions which simply states: "The defendant has entered a plea of not guilty thereby denying each and every essential element as stated in the indictment. Neither the indictment nor the plea of not guilty is evidence and is not to be considered by you as evidence. The indictment and the plea of not guilty form the issue which you are to determine."

8. The trial court did not err in allowing the district attorney to read case law during his closing argument. *Goodrum v. State,* 240 Ga. 678 (242 SE2d 158) (1978).

9. The trial court did not refuse to allow the testimony of an eyewitness as to the manner and appearance of appellant at the time of shooting. The record shows that the state objected to counsel leading the witness, the court sustained the objection and instructed the jury to disregard the leading question and response and any evidence which dealt with appellant's state of mind. Evidence concerning the behavior and appearance of the appellant was not prohibited.

10. As appellant did not raise any objection at trial as to Detective Cribbs' qualifications to testify as an expert, there is nothing for this court to review on appeal. *Cauley v. State,* 137 Ga. App. 814 (224 SE2d 794) (1976).

11. The trial court did not refuse to require the district attorney to tender into evidence the written statement of Cathy Way. The appellant objected to any attempt by the district attorney to read the statement into evidence without tendering it. The statement was only used by the state for purposes of impeaching her testimony on direct. This enumeration is without merit.

12. The trial court did not err in allowing a witness for the state to attempt to testify as to an alleged act of violence previously committed by appellant after he elected to put his character into evidence. The defendant presented three character witnesses all of whom testified that his reputation was good. The first witness was cross-examined by the state and asked if he knew about a fighting incident involving the defendant and three Korean nationals while the defendant was serving in Korea. The colonel replied that he had heard something about it and it did not change his opinion. The other two witnesses were not cross-examined about the incident. After the defense rested, the prosecution placed Ben Towery, a military police investigator, on the stand and questioned him about the incident. The witness testified that he had heard of the incident, but could not say who started the fight because he had not investigated it. "[O]n

cross-examination the state may inquire with particularity to test the witness' basis for the opinion given, and may 'inquire if he has not heard particular persons speak ill of him, or if he has not known him to be accused of particular crimes.' [Cit.]" *Upton v. State,* 128 Ga. App. 547, 551 (197 SE2d 478) (1973). See also *Lester v. State,* 145 Ga. App. 847 (244 SE2d 880) (1978). While the appellant raised an objection to the cross-examination of his witnesses, he did not renew his objection after he rested his case as to the testimony of Towery. Even if he had, Towery's testimony had no probative value because it was based on hearsay and was not prejudicial to him. He should have moved to have the testimony stricken from the record.

13. The trial court did not err in denying the defendant's motion for a continuance. On October 1, 1979, the defendant moved the court to request the attendance of an out-of-state witness, the victim's mother. The motion was granted by the court. At trial, it was disclosed that the witness had not been served because she was traveling abroad. Counsel admitted that he had not interviewed the witness and could not assure the court that she would testify or what her testimony would be although he expected her to testify as to a beating she suffered at the hands of the victim.

"All applications for continuance are addressed to the sound discretion of the court and shall be granted or refused as the ends of justice may require." *Shaw v. State,* 239 Ga. 690, 692 (238 SE2d 434) (1977). In the absence of a clear showing of abuse of this discretion, the appellate courts will not interfere with the trial court's refusal to grant a continuance. *Smith v. State,* 120 Ga. App. 448 (170 SE2d 832) (1969). Although appellant attempted to comply with the requirements of The Uniform Act to Secure the Attendance of Witnesses From Without the State, Code Ann. § 38-2001a et seq., the witness was unable to be located because she was on the high seas. As her only testimony was expected to go to the alleged beating she had received at the hands of her son, it was inadmissible. General character of the deceased as to specific acts of violence against a person other than the accused is not admissible. *Barrett v. State,* 140 Ga. App. 309 (231 SE2d 116) (1976). The trial judge did not abuse his discretion in denying the continuance.

14. Appellant's jury trial for murder did not subject him to double jeopardy. After the August 3, 1979, preliminary hearing, Judge John R. Harvey reduced the charges from murder to involuntary manslaughter. On September 8, 1979, the district attorney appeared before the grand jury and obtained an indictment for murder.

Under Code § 26-507 (a): "A prosecution is barred if the accused was formerly prosecuted for the same crime, based upon the same

material facts, if such former prosecution (1) resulted in either conviction or acquittal; or (2) was terminated improperly after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts, or after a plea of guilty was accepted by the court." The preliminary hearing was clearly not a trial and merely a proceeding to determine probable cause and the return of the indictment charging appellant with murder did not violate the provisions of the State or Federal Constitutions. The district attorney testified that he believed that additional evidence which the state did not have available at the preliminary hearing was submitted to the grand jury. The trial transcript reveals that there was evidence in addition to that presented at the preliminary hearing. This enumeration is without merit.

*Judgment affirmed. Birdsong and Sognier, JJ., concur.*

SUBMITTED JULY 8, 1980 — DECIDED SEPTEMBER 8, 1980 — REHEARING DENIED SEPTEMBER 25, 1980 — 

*John R. Calhoun, William O. Cox,* for appellant.
*Dupont K. Cheney, District Attorney,* for appellee.