## A04A0657. BALLARD v. THE STATE.
### (601 SE2d 434)

MILLER, Judge.

A jury found Antarvis Ballard guilty of trafficking in cocaine, possession of cocaine with the intent to distribute, possession of marijuana, and possession of a firearm by a convicted felon. The trial court merged the possession of cocaine with intent to distribute charge into the trafficking charge and sentenced Ballard to 25 years to serve.[1] Ballard appeals, asserting that (1) the evidence was insufficient to support his convictions, (2) the trial court erred by failing to

---

[1] The trial court also revoked the balance of his probation for a previous possession of cocaine with intent to distribute conviction.

recharge the jury on reasonable doubt and other legal principles in the bifurcated portion of his trial, and (3) he received ineffective assistance of counsel. For reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the record shows that a narcotics detective obtained a search warrant for an apartment to look for Ballard as well as a large amount of cocaine and marijuana. When police officers executed the warrant, they discovered that the apartment was small, consisting of a living room, kitchen, bedroom, and bathroom. As they entered the front door, the police saw Ballard lying on a bed in the bedroom appearing to awaken. The police handcuffed Ballard and placed him on the living room couch. As the police were placing Ballard on the sofa, he spontaneously shouted in an angry way, "You all ain't smart enough to get a warrant to get my dope." As Ballard began to lose his temper and control, a police officer stopped him, read him his *Miranda* rights, and told him not to talk anymore because it was in his own interest to get control of his temper. Ballard ignored this advice, became more agitated, and stated, "There ain't shit in this house today. . . . You should have been here yesterday."

When a K-9 unit arrived ten to fifteen minutes later, a drug-sniffing dog alerted in the kitchen. The police found 3.5 ounces of suspected crack cocaine, roughly 280 hits, and 99.7 grams of suspected marijuana hidden in the kitchen cabinets. They also found an electronic jewelry scale that measures by the gram. In addition to the drugs, the police discovered a loaded 9 mm pistol sitting on top of a large screen television that was in the direct center of the living room and two photographs showing Ballard holding a large amount of money like a fan. Ballard's keys to the apartment were located next to the gun on top of the television.

After the police located the drugs, Ballard said, "That ain't shit, that's just some corner boy shit," which the narcotics officer interpreted as meaning "that he was above that amount of drugs. . . ." Ballard continued, "You think a big dope boy like myself keeps all his dope in one place?" The narcotics officer testified that "dope" is street slang for crack, marijuana, and other illicit drugs.

As the police continued to search the apartment, Ballard continued making belligerent statements to the police like, "You will never prove that I live here, there ain't shit with my name on it." Yet, when the police seized the television, Ballard stated, "Where are you going with my Play Station and TV?" As the police were labeling the bags of drugs with weights, Ballard stated, "That's about 3.5 ounces worth, about $3,500 because it's already been cut three or four times." When the police officer later measured the bag, he discovered that Ballard had accurately predicted its weight. The police also found $1,905 in

Ballard's front right shirt pocket, comprised of two $100 bills, thirteen $50 bills, forty-one $20 bills, sixteen $10 bills, twelve $5 bills, and fifteen $1 bills. Police officers testified that crack is sold in $5, $10, and $20 hits.

The narcotics detective testified that he was trained to identify marijuana in the field without testing it and that based on his training, experience, and knowledge, the substance seized from the apartment was marijuana. A Georgia Bureau of Investigation chemist tested the suspected cocaine seized from the apartment and testified that the substance was in fact cocaine. She did not test the suspected marijuana.

Although the apartment was leased by Ballard's sister, she was not present when the warrant was executed and she never appeared at trial to testify on Ballard's behalf. The narcotics detective confirmed that Ballard stayed there.

1. Ballard contends that the evidence was insufficient to support his cocaine trafficking and possession of cocaine with intent to distribute convictions because there was no direct evidence linking him to the cocaine, which was not in plain view, and because his mere presence in the apartment could not support his convictions. We find no merit in this argument because there was more evidence than Ballard's presence in the apartment that linked him to the cocaine. The jury could infer that Ballard actually lived in the apartment because he claimed ownership of the TV and Play Station, because it was a one-bedroom apartment to which he had a key, because he was sleeping in the bedroom when the police arrived, and because no one else was present. Ballard's own statements provided additional evidence demonstrating his possession of the cocaine hidden in the kitchen cabinets. Ballard's claim that, "You ain't smart enough to get a warrant to get *my dope*," clearly implies he had dope in the apartment and that he did not believe the police could have obtained a warrant to find it. Ballard also made several statements demonstrating his knowledge of the amount of drugs found by the police, as well as his status as a drug dealer, from which the jury could infer that the drugs belonged to Ballard. Ballard also had $1,905 on his person with large numbers of denominations used to purchase drugs. We find this evidence sufficient to support Ballard's convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

We find no merit in Ballard's contention that his statements cannot be used as circumstantial evidence to support his convictions because his counsel provided an innocent explanation for each of them *at the motion for new trial hearing*. The explanations were not made in the trial itself. Instead, Ballard testified at trial that he never made any of the statements. The conflicting stories of Ballard at trial

and his counsel at the motion for new trial hearing provide no support for Ballard's argument that the evidence presented at trial was insufficient to support his convictions. See *Lowery v. State*, 264 Ga. App. 655, 657 (2) (592 SE2d 102) (2003) (rejecting defendant's reasonable hypothesis of innocence on appeal that was not presented to the jury and was directly contradicted by defendant's own's testimony).

2. Ballard contends that the evidence was insufficient to support his possession of marijuana conviction for the same reasons outlined in Division 1. He also contends that the State failed to prove that the leafy substance found in the apartment was marijuana because no proper foundation was laid for the officer's testimony that it was marijuana. We find no merit in this enumeration for the reasons stated in Division 1. Additionally, Ballard waived his claim that the State failed to prove that the substance was marijuana by failing to object to the State's alleged failure to lay a foundation for the officer's testimony that it was marijuana. *Corley v. State*, 192 Ga. App. 35, 36 (2) (383 SE2d 586) (1989); *Horne v. State*, 155 Ga. App. 851, 856 (10) (273 SE2d 193) (1980); *Cauley v. State*, 137 Ga. App. 814-815 (1) (224 SE2d 794) (1976).

3. We find no merit in Ballard's contention that the evidence was insufficient to support his possession of a firearm by a convicted felon conviction. For the reasons stated in Division 1, the jury could infer that Ballard actually lived in the apartment and that the items found in the apartment belonged to him. We further note that the gun was found in plain view on the television, which Ballard claimed as his own, next to Ballard's keys to the apartment, and his vehicle was found outside. As a result, Ballard's conviction is supported by more evidence than just his mere spatial proximity to the gun. See *Brackins v. State*, 249 Ga. App. 788, 789 (1) (549 SE2d 775) (2001) (evidence sufficed to support cocaine possession conviction when cocaine found in pocket of windbreaker and defendant inquired about his money found in the other pocket); *Young v. State*, 242 Ga. App. 681, 684 (1) (530 SE2d 758) (2000) (evidence sufficed to support cocaine possession conviction where cocaine found with gun that defendants owned); *Noble v. State*, 225 Ga. App. 470, 471-472 (484 SE2d 78) (1997) (sufficient evidence supported possession conviction when contraband was found inside pillowcase of a pillow that was lying on top of a gun that defendant admitted that he owned).

4. Ballard contends the trial court erred by failing to recharge the jury on "reasonable doubt, presumption of innocence and other general principles of law" in the bifurcated trial on the possession of a firearm by a convicted felon charge. The record shows that the trial court fully charged the jury before deliberations in the first part of the bifurcated trial. After receiving the charge, the jury deliberated for

the afternoon and rendered a guilty verdict the next morning at 9:58 a.m. after further deliberations. The trial court then informed the jury of the additional charge against Ballard (possession of a firearm by a convicted felon) and asked them to recall the court's previous preliminary instructions and its other instructions at the close of the first part of the bifurcated trial. After the parties presented evidence that was transcribed in seven pages, the trial court again reminded the jury of its previous instructions and provided new instructions relevant to the additional charge. The trial court also advised the jurors that it would recharge them on its previous instructions if they so desired. After deliberating for 19 minutes, the jury returned a verdict of guilty at 2:32 p.m.

We find that

> [w]hether, pursuant to *Griffith v. State*, 264 Ga. 326 (2) (444 SE2d 794) (1994), it is error for the trial court to fail to recharge fully on reasonable doubt, presumption of innocence, and other general principles of law after the second phase of the bifurcated trial, as held in *McKenye v. State*, [247 Ga. App. 536, 538-539 (3) (544 SE2d 490) (2001), overruled on other grounds, *Wallace v. State*, 275 Ga. 879, 881 (3) (572 SE2d 579) (2002)], or not, as held in *Smith v. State*, 244 Ga. App. 512, 513 (1) (539 SE2d 504) (2000), any such error here was harmless considering the short period of time between the two charges. [Cits.]

*Simmons v. State*, 251 Ga. App. 682, 690 (7) (b) (555 SE2d 59) (2001).

5. Finally, Ballard asserts that he received ineffective assistance of counsel. The two-prong test for determining the validity of a claim for ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable possibility that the outcome of the proceedings would have been different but for counsel's deficiency. *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001). "A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous." (Citations and punctuation omitted.) *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992).

> Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that

order or even to address both components if the defendant has made an insufficient showing on one.

*Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993). Here, evidence supported the trial court's conclusion that Ballard's trial counsel rendered effective assistance.

Ballard claims he received ineffective assistance of counsel because his trial lawyer failed (a) to make a motion for a directed verdict of acquittal on the possession of a firearm by a convicted felon charge, (b) failed to object to the trial court's failure to recharge the jury in the second portion of the bifurcated trial, (c) failed to object to a portion of the narcotics detective's testimony, and (d) failed to object to five separate statements made by the State during closing argument.

(a) Based on our holding in Division 3 that the evidence sufficed to sustain the conviction, we find no merit in Ballard's claim that his counsel should have moved for a directed verdict on the possession of a firearm by a convicted felon charge. See *Coggins v. State*, 275 Ga. 479, 482 (3) (569 SE2d 505) (2002).

(b) Likewise, Ballard's argument that his counsel should have objected to the trial court's failure to recharge the jury in the second phase of the bifurcated trial also fails based on our finding of harmless error in Division 4. See, e.g., *Marshall v. State*, 275 Ga. 740, 745 (10), n. 21 (571 SE2d 761) (2002).

(c) Ballard asserts his counsel should have objected to the detective's testimony that he was part of a "field investigation team" that took complaints from citizens to investigate "a drug dealer or a drug ring." Ballard's trial counsel testified that he had no specific recollection of this testimony, but he "would assume that I was anxious not to flag it for the jury." In general, trial counsel would sometimes not object to testimony because he did not want to call more attention to the statement, particularly if he thought the objection would be overruled by the trial court. We find no deficient performance by trial counsel for failing to object to this testimony. See, e.g., *Braithwaite v. State*, 275 Ga. 884, 886 (2) (b) (572 SE2d 612) (2002) (holding trial counsel reasonably chose to remain silent and "we will not use hindsight to second-guess that decision on appeal") (footnote omitted).

(d) Ballard argues trial counsel was ineffective for failing to object to the following statements made by the prosecutor in her closing arguments:

I ask for your verdict in this case to speak the truth to Mr. Ballard. *The truth is Mr. Ballard is a drug dealer. The truth is that drugs, large amounts of money, and guns go together.*

*Ladies and gentleman, [Ballard's] statements just give you a picture of a mid to high level drug dealer.*

What about the money? $1,905 in various assortments of bills. . . . [I]t should be offensive to you that he had his mother come in and suggest to you that this was . . . some bonus that she had gotten that she had been holding onto for eight months . . . and they were trying to raise this cash to get somebody out of jail. . . . *You have a whole bunch of denominations like this because that's how drugs are sold, they're sold in these types of increments, twenties, fifties, couple of hundreds here and there. That's what you get, big drug dealers, big wads and wads of cash to flash around, because everything isn't conducted in hundred thousand dollar bills; they're conducted in smaller denominations just like you have in the picture here.*

*Drug dealers, high level drug dealers have to possess guns to protect their assets. They protect their homes that way, they shoot at the police when they come in to execute search warrants, you know that from common sense.*

Trial counsel testified in the motion for new trial hearing that he did not object because he believed these statements came within the wide latitude given to counsel in closing argument. We agree with counsel's assessment.

As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion. This "wide latitude" encompasses the prosecutor's ability to argue reasonable inferences raised by the evidence.

(Citations and punctuation omitted.) *Cole v. State*, 261 Ga. App. 809, 810 (2) (584 SE2d 37) (2003). As each of the prosecutor's statements was a reasonable inference drawn from the evidence,[2] trial counsel's failure to object was not deficient performance. *Mason v. State*, 274 Ga. 79, 80 (2) (b) (548 SE2d 298) (2001).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

---

[2] The narcotics detective testified on cross-examination that there are two responses when they execute a raid pursuant to a warrant: the suspects will either shoot at the police or submit.

DECIDED JUNE 21, 2004.

*Charles H. Frier*, for appellant.

*Jeffrey H. Brickman, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.