## A07A1594. CANTRELL v. THE STATE.

(660 SE2d 468)

SMITH, Presiding Judge.

A jury convicted Taurus DeShawn Cantrell of trafficking in cocaine and possession of cocaine with intent to distribute.[1] The two counts merged and Cantrell was sentenced to twenty years, with ten to serve in confinement. Cantrell contends on appeal that the trial court erred by denying his motion for a new trial in which he alleged ineffective assistance of counsel. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840-841 (1) (607 SE2d 565) (2005). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that agents of the Hall County Multi Agency Narcotics Squad ("MANS") initiated an undercover drug buy with a confidential informant ("CI") who told them he had met a man who had agreed to sell him five ounces of crack cocaine that afternoon at a local grocery store. The CI met Cantrell at the store, then drove to a nearby AutoZone store, where Cantrell soon joined him in his vehicle and remained for some time. After the CI issued a prearranged signal to MANS indicating he had seen the cocaine, the first undercover officer arrived on the scene in an unmarked black pickup truck. The officer was wearing a bullet-proof vest over the outside of his shirt with the word "POLICE" on the front and back, a badge around his neck, as well as handcuffs and a weapon. When the officer emerged from his car and shouted, "Stop, stop police," Cantrell "took off running."

A foot chase ensued through an alleyway, over multiple chain link fences, and on a path behind a residential area. Cantrell surrendered when several uniformed officers and patrol cars converged on the area. The officer who first gave chase testified that he saw Cantrell throw a large bag down in the area where the contraband was recovered. The police found almost four ounces of cocaine in a yard adjacent to the route of the chase and less than forty yards from where Cantrell was apprehended. In a statement given to police after

---

[1] This was Cantrell's second trial on these charges. In the first trial, Cantrell was convicted of obstruction of an officer, a conviction not before us in this appeal, but the jury could not agree on a trafficking or possession verdict.

his arrest, Cantrell admitted that he had "cocaine on him" before being chased by police officers.

Testifying in his own defense, Cantrell explained that he had met the CI through his cousin, talked to him at the grocery store parking lot, and then met up with him at the AutoZone lot where Cantrell was waiting for his sister so he could help fix her car. Cantrell testified that he was panicked by the sudden appearance of a stranger with a gun running toward him and that he never heard any shouts for him to stop, never possessed or threw any cocaine, and surrendered as soon as he saw uniformed police. Cantrell denied receiving *Miranda* warnings or making a statement.

Cantrell's counsel argued during closing that the State introduced no fingerprints, DNA tests, recordings, cell phone records, or testimony by the CI that would support the officers' version of events. Based on these facts, Cantrell's counsel urged the jury to accept his client's version of events.

The State responded by comparing the two accounts and asking the jury which was reasonable, which was supported by the evidence, and which completely hinged on the credibility of one person — the defendant — together with the alleged complete fabrication of the events in issue by three law enforcement officers. The State concluded with the following:

> I almost am reluctant to even mention this, go into this, but I feel obligated to because of the testimony of the defendant and closing argument of Mr. Burroughs, how three career law enforcement officers are going to risk their careers by lying to you ladies and gentlemen in order to convict one person.

> Last week — please don't interpret this as an attempt to inflame your passions whatsoever. It may be a bad time to bring it up, but Hall County suffered a tragedy last week when an officer was killed in the line of duty. I attended his funeral. Horse-drawn carriage with a casket on it, 21-gun salute, bugle playing taps, killed in the line of duty, an officer who dedicated his life to protecting the citizens of this county, fighting crime. And I am offended when a defendant and a defense attorney accuses officers of being liars, being cheats, and making up statements of defendants and fabricating evidence.

> We all have contact with officers at some point in our lives, maybe even daily. You've had a chance to observe every one of the officers that testified. You judge their credibility,

because in order to find the defendant guilty, you will have to call each of those officers liars.

Cantrell's trial counsel testified at his motion for new trial hearing that in retrospect, he thought that the State's argument regarding the funeral of an officer who was not involved in this case was "clearly improper." He thought the argument was intended to inflame the jury's passions and improperly bolstered the officers' testimony. The State argued that the trial court must view the closing as a whole and that its closing argument contained no statements of personal belief but was simply a response to Cantrell's argument that the officers' testimony was not credible. The recent funeral was part of the community's experiences and constituted an example of an officer who loved his job, dedicated his life to it, and would not lie.

In denying Cantrell's motion for new trial, the trial court cited *Crews v. State*, 226 Ga. App. 232 (486 SE2d 61) (1997), in which the State in closing argument asked why two officers with twenty-five years of experience would risk their careers to lie about the evidence. In finding the argument was not improper, this court held that "[t]he probability or improbability of the police officer's testimony, as well as his interest or want of interest and personal credibility, could also properly be considered by the jury." (Citations and punctuation omitted.) Id. at 236 (5) (b).

Cantrell argues on appeal that his trial counsel was ineffective for failing to object to this portion of the State's closing argument. To prevail on this claim, Cantrell must show both that counsel's performance was deficient and that he was prejudiced by the deficiency; that is, that a reasonable possibility exists that the outcome of the proceedings would have been different but for counsel's deficiency. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Garvin v. State*, 283 Ga. App. 242, 244 (3) (641 SE2d 176) (2007). We will affirm a trial court's determination on the effectiveness of counsel unless its findings are clearly erroneous. *Ballard v. State*, 268 Ga. App. 55, 59 (5) (601 SE2d 434) (2004).

"As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion." (Citation and footnote omitted.) *Arnold v. State*, 249 Ga. App. 156, 162 (4) (545 SE2d 312) (2001). This "wide latitude" encompasses the prosecutor's ability to argue inferences raised by the evidence. *Wyatt v. State*, 267 Ga. 860, 864 (2) (a) (485 SE2d 470) (1997). These inferences are permissible even if they "are remote, illogical or unreasonable. . . . The probability or improbability of the police officer's testimony, as well as his interest or want of interest and personal credibility, could also

properly be considered by the jury. OCGA § 24-4-4." (Citations and punctuation omitted.) *Abernathy v. State*, 192 Ga. App. 355, 356 (2) (385 SE2d 25) (1989).

The wide range of discussion permitted in closing argument, however, "does have its limitations, the first and foremost of which is the longstanding prohibition against the injection into the argument of extrinsic and prejudicial matters which have no basis in the evidence." (Citations and punctuation omitted.) *Bell v. State*, 263 Ga. 776, 777 (439 SE2d 480) (1994).

> Argument of counsel is a valuable privilege, and may not be unduly restricted. On the other hand, the court must not allow such latitude as will defeat the justice of the cause, such as introducing prejudicial matters not in evidence. The dignity of the court, and the public interest in having its courts properly conducted, are involved.

(Citation omitted.) Id. In *Bell*, a drug trafficking case, the prosecutor in closing referred to both a serial rapist and an unrelated triple murder. Id. at 776-778. Because no evidence of murder or rape arose during the trial, or evidence from which rape and murder would be a reasonable inference, the Supreme Court reversed the conviction.

Our courts have a long tradition of reversing criminal convictions when the State injects extrinsic prejudicial evidence into its closing argument. "Counsel should not go outside the facts appearing in the case and the inferences to be deduced therefrom, and lug in extraneous matters as if they were a part of the case. . . ." *Smith v. State*, 74 Ga. App. 777, 792 (4) (41 SE2d 541) (1947). In 1913, this court reversed a conviction for the illegal sale of liquor because the prosecution argued,

> "These blind tigers are running around all over the country, sending souls to hell, and have no respect for Jesus Christ or woman, and you ought to stop that kind of stuff. Everything you hear is people all over the country talking about blind tigers, and I ask you not to tolerate this stuff, and I ask you to help me convict them."

*Manning v. State*, 13 Ga. App. 709 (79 SE 905) (1913). Because the argument was not a fair inference from the record, the defendant was granted a new trial. Id. at 710.

Our opinion in *Moss v. State*, 278 Ga. App. 221, 223 (1) (628 SE2d 648) (2006), does not require a different conclusion. *Moss* affirmed the wide latitude given during closing argument by allowing a reference to a local shooting in which a 14-year-old bystander was killed in an

unrelated crime. Id. We held that the crime was analogous, because both it and the crime at trial began with one person insulting another and ended in a gunfight. Id. The State's reference to an officer slain in the line of duty, however, has no relation to the crime for which Cantrell was indicted.

Nor can we find that the failure to object was based on trial strategy. See *Braithwaite v. State*, 275 Ga. 884, 886 (2) (572 SE2d 612) (2002) (upholding conviction where ineffective assistance alleged after prosecutor made "golden rule" comparison in closing but where defense counsel made a conscious decision not to object so as not to draw attention to comparison). Cantrell's former counsel, in contrast, testified at his hearing for new trial that in retrospect, he should have objected to the prosecution's closing argument, that it seemed "intended to inflame" the jury, and that "it just got by me."

It was the injection of extrinsic prejudicial matters which is the issue here, and trial counsel's failure to object to the prosecutor's closing constituted deficient representation. Rather than arguing the issue of police credibility, the prosecutor showcased his attendance at the funeral of an officer killed in the line of duty — a tragic and emotionally charged event that had no relation to the evidence admitted or the case at hand. Under these circumstances, the argument was improper and trial counsel was deficient.

Cantrell is not entitled to a new trial, however, unless he can demonstrate that he was prejudiced by his counsel's deficient performance. Based upon the overwhelming evidence of Cantrell's guilt, we find that he failed to meet his burden of proving a reasonable probability that the outcome would have been different but for his counsel's failure to object during the State's closing argument. See generally *Laredo v. State*, 253 Ga. App. 155, 158 (2) (558 SE2d 742) (2002); *Bunkley v. State*, 278 Ga. App. 450, 454 (1) (a) (629 SE2d 112) (2006). In a statement given to police after his arrest, Cantrell admitted that he had "the cocaine on him" before being chased by police officers. A police officer saw him throw a large bag down while he was being chased, and a large amount of cocaine was recovered in this same location, less than 40 yards from where Cantrell surrendered.

*Judgment affirmed. Andrews, P. J., Johnson, P. J., and Ellington, J., concur. Barnes, C. J., Miller and Adams, JJ., concur in part and dissent in part.*

BARNES, Chief Judge, concurring in part and dissenting in part.

Although I concur fully with the majority's conclusions that the prosecutor's argument was improper and that Cantrell's defense counsel was ineffective for not objecting to it, I must respectfully dissent from the majority's final conclusion that Cantrell did not

satisfy the second prong of the *Strickland* test. Cantrell's burden was to show a reasonable probability, i.e., one sufficient to undermine confidence in the outcome, existed that, but for counsel's unprofessional errors, the result of his second trial would have been different. *Head v. Hill*, 277 Ga. 255, 266 (VI) (587 SE2d 613) (2003). The record before us shows that he satisfied that burden.

This is an unusual case because we have the benefit of knowing the result of a trial without the prosecutor's improper argument. We know that because Cantrell's first trial, without the prosecutor's improper argument, resulted in a mistrial on these charges after the jury could not reach a verdict. We also know that this was not merely a jury that did not weigh the evidence, because it convicted Cantrell of obstructing a police officer by running from an officer. This strongly suggests that the prosecution's case was not so overwhelming that without the prosecutor's irrelevant and inflammatory argument a conviction was the only likely outcome.

Even though we do not have the complete record of the first trial before us, we have no reason to believe that the prosecution's evidence was significantly stronger in this trial. Moreover, the prosecution has not asserted that the evidence in the two trials was materially different.

Cantrell's trial hinged largely on the relative credibility of two divergent accounts of what happened during and immediately after a drug bust by the Hall County Multi Agency Narcotics Squad ("MANS"). Equally important is the credibility of the confidential informant, who did not testify. Without the informant, Cantrell has an innocent explanation for his actions that night.

In his closing argument Cantrell's counsel urged the jury to accept his client's version of events. He also argued that the evidence did not prove Cantrell guilty beyond a reasonable doubt.

In doing so, counsel called into question several key facts and decisions made during the course of an undercover investigation. Specifically, he argued that the police did not fingerprint the bags containing the recovered cocaine, which could have proved conclusively that Cantrell actually possessed and threw them. Further, no DNA tests were performed on the packets.

He also argued that the arresting officers did not execute a written *Miranda* form, which could have proved Cantrell was, in fact, given *Miranda* warnings. More tellingly, he argued that the officer, who said that Cantrell admitted possessing the cocaine, denied having interviewed Cantrell when he testified at Cantrell's commitment hearing.

Moreover, although the majority relies upon this statement as overwhelming proof of Cantrell's guilt, this was not the typical police interrogation. The officer testified that after Cantrell arrived at the

detention center he questioned Cantrell. He did not use a *Miranda* warning form and could not recall whether he used a warning card, or gave the warnings from memory. According to the officer, he asked Cantrell whether he met anybody, and Cantrell responded that he did not meet anybody because he already had the cocaine. Apparently, having obtained this nonresponsive answer to his question, the officer lost interest in questioning Cantrell and asked no other questions.

When asked why he testified at the commitment hearing that he did not interview Cantrell, the officer explained that he did not consider asking one question to be an interview. Also, according to the officer, no other witness heard Cantrell's statement. Although a jury could believe the officer, the testimony also leaves room for doubting whether Cantrell did make the statement.

Counsel attributed Cantrell's initial inclination to flee rather than confront an unknown armed man to his upbringing in a very tough area. He also raised the possibility that the officer who said he saw Cantrell throw something may simply have expected[2] him to do so based on the officer's prior similar experiences. This was further buttressed by the officer's testimony that he only saw one item thrown and did not realize that two items were found.

Cantrell's counsel further noted that the cocaine was found away from the path of the chase. The officer testified that the cocaine was found 40 or 50 yards or 60 or 70 feet from where the officer fell; he really did not know. Additionally, the officer who testified that he saw Cantrell throw something was not the officer who found the cocaine, and the officer who testified that he saw the throw never saw the cocaine the other officer found while at the scene. At trial the officer testified that the cocaine introduced in evidence appeared to be the same size and type of bag.

The informant did not testify even though he allegedly arranged the deal and sat with Cantrell for 40 minutes before transmitting a prearranged signal to officers on the scene indicating he had seen the cocaine. Finally, counsel argued that no records of any phone calls between the informant and Cantrell were submitted by the prosecution to confirm their discussions leading up to the transaction even though Cantrell's cell phone was in evidence. Counsel noted that Cantrell had no prior criminal record for drug-related offenses, and nothing in the evidence suggested that Cantrell had been a suspect before his arrest.

---

[2] The officer testified that throwing motions were the main thing he looked for in a chase and he watched Cantrell's hands the whole time. He testified, "I knew that it was a plastic bag. I really didn't – I really didn't have time to really look at it and see what it was to that effect, but, I mean, I knew why we were there and what the possibility was."

Without question the thrust of the defense's argument was to challenge the police officers' credibility. In response, the prosecutor finished his closing with the following, in pertinent part:

> I am almost reluctant to even mention this, go into this, but I feel obligated to because of the testimony of the defendant and closing argument of Mr. Burroughs, how three career law enforcement officers are going to risk their careers by lying to you ladies and gentlemen in order to convict one person.
>
> Last week — please don't interpret this as an attempt to inflame your passions whatsoever. It may be a bad time to bring it up, but Hall County suffered a tragedy last week when an officer was killed in the line of duty. I attended his funeral. Horse-drawn carriage with a casket on it, 21-gun salute, bugle playing taps, killed in the line of duty, an officer who dedicated his life to protecting the citizens of this county, fighting crime. And I am offended when a defendant and a defense attorney accuses officers of being liars, being cheats, and making up statements of defendants and fabricating evidence.
>
> We all have contact with officers at some point in our lives, maybe even daily. You've had a chance to observe every one of the officers that testified. You judge their credibility, because in order to find the defendant guilty, you will have to call each of those officers liars.

The prosecutor personalized his remarks and injected emotionally charged and prejudicial material entirely unrelated to the evidence. The remarks were not used to paint an alternate explanation of the facts. At best the inappropriate argument here is a momentary rush of sentimentality; at worst it represents a bald and calculated attempt to channel the present despair of a community in mourning into sympathy for the prosecution's case.

Indeed, the prosecutor seemed to know he should not refer to the outside events at the outset when he said, "I am almost reluctant to even mention this [and] . . . [i]t may be a bad time to bring it up." And, he clearly recognized the danger that those remarks could inflame the passions of the jury because he said as much.

As to prejudice, there is a reasonable probability that the result of Cantrell's trial would have been different, but for the prosecutor's closing remarks. The intense and repeated imagery of death played on the emotions of the jury. The prosecutor repeated that the officer

was killed and he described the funeral in detail by referencing the flag-draped coffin and the 21-gun salute, almost implying a patriotic duty to convict.

Further, the remarks came at the end of his closing and, therefore, would have been fresh in the minds of jurors as they deliberated. Finally, to introduce such comments by explicitly warning against the possibility that they might inflame passions did not eliminate the threat. Instead, it sowed a strong seed of suggestion and may have transformed a disclaimer into reality.

The majority maintains that Cantrell cannot satisfy the second *Strickland* prong because the evidence against him was overwhelming, as Cantrell admitted having cocaine and cocaine was recovered less than 40 yards from where he surrendered. Cantrell, however, denied making the admission which the police officers attribute to him, and the officers' testimony and Cantrell's denial were before the jury in his first trial. That the jury still could not reach a verdict on these charges can only mean that the evidence was not overwhelming.

Further, the prosecutor clearly did not consider the evidence against Cantrell so overwhelming that he should forego what he admittedly knew was an improper argument likely to inflame the passions of the jury. Such intentional misconduct should not be rewarded.

The first trial against Cantrell resulted in a hung jury, and a mistrial was declared as to Counts 1 and 2, trafficking in cocaine and possession of cocaine with intent to distribute. We have no reason to believe the evidence in the second trial varied from the first, and thus we may compare the two for the purpose of determining what effect the inappropriate closing may have had on the jury's decision. All else being equal, it is reasonable to conclude that the prosecutor's remarks tipped the balance in favor of the prosecution. The extreme nature of these remarks created a reasonable probability that the outcome of the case would have been different but for the deficient performance of counsel in not objecting to them. *Allen v. State*, 271 Ga. 502, 503 (2) (521 SE2d 190) (1999).

We can never be certain how a case will turn out, but we are not required to forecast that an acquittal would have resulted. Our law requires that Cantrell show "only a reasonable probability of a different outcome, not that a different outcome would have been certain or even 'more likely than not.'" (Citation and punctuation omitted.) *Schofield v. Gulley*, 279 Ga. 413, 416 (I) (A) (614 SE2d 740) (2005). Given the result of the first trial, no speculation is required to determine whether a reasonable probability of a different outcome existed for such a result has already occurred in this case.

As I am satisfied that Cantrell met his burden of showing prejudice, I must respectfully dissent.

I am authorized to state that Judge Miller and Judge Adams join in this dissent.

DECIDED MARCH 28, 2008.

*Valpey & Parks, Gregory W. Valpey*, for appellant.
*Lee Darragh, District Attorney, Juliet Aldridge, Assistant District Attorney*, for appellee.

