## A92A2434. ANIMASHAUN v. THE STATE.
(427 SE2d 532)

BLACKBURN, Judge.

The appellant, Olufemi Olarewaju Animashaun, was convicted of felony obstruction of a law enforcement officer, for which he was sentenced under the First Offender Act to serve 12 months on probation, 240 hours of community service, and payment of a $550 fine. On appeal, he contends that the evidence was insufficient to support his conviction, and that the trial court erred in failing to charge the jury on defense of habitation.

On the evening of December 5, 1990, the appellant's wife, who had left him three days earlier, returned to their apartment to retrieve some of her personal belongings. Fearing a violent confrontation with her husband, she had requested two men from her church and also a City of Marietta police officer to accompany her.

The arresting officer testified that when he drove into the apartment parking lot, he saw the appellant walk out of the apartment and approach his wife in an animated fashion. The appellant was jumping up and down, waving his arms, and screaming obscenities. At that point, the officer was concerned that the appellant might harm his wife, and he quickly exited his patrol car and positioned himself between the two. For two to three minutes, he unsuccessfully tried to calm the appellant down, explaining that his wife merely wanted to pick up some personal property and then leave. However, the appel-

lant remained irate and continually screamed obscenities at his wife and the officer. The appellant then ran into the apartment, locked the door, and resumed screaming obscenities from the apartment windows. By this time, a throng of approximately 60 to 80 onlookers was assembling, and the officer called in for back-up.

The officer recalled that he then continued to try to reason with and calm the appellant, but when the appellant demonstrated no sign of ceasing his disruptive behavior, the officer decided to place him under arrest for misdemeanor obstruction of a police officer, based on the appellant's actions when the officer arrived at the scene, i.e., his interference with the officer's effort to maintain the peace. He also pointed out that the appellant's behavior violated a city ordinance prohibiting disorderly conduct, although he did not choose to arrest the appellant for that offense. The officer was able to inform the appellant that he was under arrest while the appellant had his head in a window, and the appellant's wife then willingly gave him her key to the apartment so that they could effect his arrest. Before he and the other officers entered the residence, however, the appellant shouted that "the first officer that comes in will have his head broken open."

When the officers entered the apartment, the appellant was standing on a stairway leading to the upper level of the apartment; he was panting heavily, and his eyes were flaring. The arresting officer encouraged the appellant to cooperate and warned him that any further hostility on his part may result in a felony charge, which could have some impact upon his immigrant status in the United States. The appellant did not move from his position, but when the officer grabbed his arm, he resisted and continually elbowed and pushed the officers. It took three or four officers two to three minutes to subdue the appellant and handcuff him.

The two church members who accompanied the appellant's wife both testified that the police officer had been exceptionally calm in dealing with the appellant, who constantly screamed obscenities during the incident. Their recollections differed from that of the arresting officer, in that they did not remember the appellant ever walking out of his apartment. One of the men did recall that the appellant levied a threat that "the first one that comes through the door is going to get it." He also had noticed that, when the appellant was brought out from the apartment, one of the officers appeared to have been bitten above his wrist.

The appellant testified, and his version of the incident differed greatly from the account given by the arresting officer and the two companions. He stated that earlier on the day in question, he had spoken with his wife and consented to her request to pick up some of her personal property that evening. He acknowledged that he became upset because she arrived with two companions and the police, and

that he behaved in an obnoxious manner that night. He also admitted that he had refused to allow anyone to enter the apartment, including the police officers, because he thought that no one could enter without a warrant. However, he expressly denied ever making a threat to the police officers or anyone else, and he denied resisting his arrest once the officers entered the apartment. Rather, he stated that he docilely complied with the officers' instructions, and complained that the officers had physically manhandled him without provocation.

1. OCGA § 16-10-24 (b) provides that "[w]hoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his official duties by offering or doing violence to the person of such officer or legally authorized person is guilty of a felony. . . ." One essential element of the offense, of course, is that the law enforcement officer must be engaged in the lawful discharge of his official duties, *Dixon v. State*, 154 Ga. App. 828 (269 SE2d 909) (1980), and the appellant contends that the arresting officer's capacity during the incident was that of a volunteer outside the lawful discharge of his official duty. We disagree.

Law enforcement officers have a full-time duty to maintain the peace. *Carr v. State*, 176 Ga. App. 113 (1) (335 SE2d 622) (1985). The appellant's wife requested that the arresting officer be present when she attempted to retrieve her possessions, for the very purpose of avoiding a violent confrontation with the appellant. When the officer arrived at the scene, he immediately had to act to defuse such a situation. For two to three minutes, he tried to persuade the appellant to calm down, but the appellant persisted in his verbal barrage of obscenities and insults addressed to his wife and the police. It was this interference with the officer's attempt to maintain the peace that formed the basis for the officer's ultimate decision to arrest the appellant for misdemeanor obstruction. The fact that the officer delayed his decision until the appellant retreated to the apartment and continued to disrupt the peace (eventually producing a crowd of 60 to 80 onlookers) does not detract from the propriety of that basis for arrest.

The appellant also contends that the officers' entry into the apartment was unlawful. Absent exigent circumstances or consent, an entry into a private home to conduct a search or to effect an arrest is unreasonable without a warrant. See *Thompson v. State*, 248 Ga. 343 (285 SE2d 685) (1981). However, in the instant case, when the appellant refused to exit the apartment after being advised that he was under arrest, the appellant's wife willingly gave the police officers her key to the apartment. At that point in time, the appellant's wife still possessed common authority over the premises, and the police officers' entry based upon her consent was authorized. See *United States v. Matlock*, 415 U. S. 164 (94 SC 988, 39 LE2d 242) (1974).

Prior to the officers' entry into the apartment, the appellant

threatened that the first person who entered would be injured. At one point, he also turned off the lights in the apartment. Initially, it should be emphasized that the appellant expressly denied making any threat at all. However, he asserts that any such alleged threat was conditional upon the illegal entry of the officers into his home, which was beyond his control, and therefore was not an actual threat. Speech must reasonably be interpreted as a threat of violence in order to constitute an offer of violence under OCGA § 16-10-24 (b). *Wells v. State*, 154 Ga. App. 246 (268 SE2d 74) (1980); see also *Duke v. State*, 205 Ga. App. 689 (423 SE2d 427) (1992). The verbal warning levied by the appellant, as recalled by the arresting officer and the other witness, met that criterion.

In any event, the evidence also established that the appellant went beyond threatening violence and, in fact, did violence to the persons of the police officers when they attempted to arrest him. Specifically, the arresting officer stated that the appellant repeatedly resisted his arrest by elbowing and pushing the officers, and one witness observed that one officer appeared to have been bitten above his wrist when they removed the appellant from the apartment.

In summary, the appellant's contentions regarding the insufficiency of the evidence requires acceptance of his account of the incident to the exclusion of the other testimony by the arresting officer and the two companions of the appellant's wife. It is the function of the jury to weigh and resolve any conflicts presented by the evidence, and it did so adversely to the appellant in this case. *Hargrove v. State*, 202 Ga. App. 854 (2) (415 SE2d 708) (1992). On appeal, we must review the evidence in the light most favorable to support the jury's verdict, and, applying that standard in this case, we find that the evidence was sufficient to authorize a rational trier of fact to find the appellant guilty beyond a reasonable doubt of the offense as charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The trial court thus properly denied the appellant's motion for directed verdict of acquittal.

2. The appellant also contends that the trial court erred in failing to charge the jury on the defense of habitation as provided in OCGA § 16-3-23, even though such a charge was not requested during the trial, because it constituted his sole defense.

Generally, where no written request for a jury charge has been filed, the failure to give that charge is not error. *Meyer v. State*, 201 Ga. App. 756 (412 SE2d 575) (1991). Also, it should be noted that the appellant's trial attorney stated that he had no objection to the jury charge as given and did not reserve the right to object later, in response to the trial court's specific inquiry, which generally results in a waiver of any objection. *Concepcion v. State*, 200 Ga. App. 358 (408 SE2d 130) (1991). However, failure to charge the sole defense, even

without a request, constitutes reversible error. *Wells v. State*, 200 Ga. App. 104 (407 SE2d 86) (1991).

In the instant case, the evidence, and particularly the appellant's own testimony, does not show defense of habitation to have been the sole defense. In fact, during the trial, the appellant steadfastly denied committing any of the obstructionist acts of which he was charged, i.e., threatening the police officers and physically resisting arrest by elbowing and pushing the arresting officers. "Thus, under the evidence, [the appellant] either committed the alleged acts of obstruction or [he] did not and no charge on [defense of habitation] as to the felony obstruction of an officer was authorized." *Love v. State*, 194 Ga. App. 601, 602 (1) (391 SE2d 447) (1990).

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JANUARY 22, 1993.

*Whatley & Associates, Lynn H. Whatley*, for appellant.

*Thomas J. Charron, District Attorney, Russell J. Parker, Nancy I. Jordan, Debra H. Bernes, Assistant District Attorneys*, for appellee.