## A00A2375. ARNOLD v. THE STATE.
### (545 SE2d 312)

RUFFIN, Judge.

A jury found Gary James Arnold guilty of child molestation, felony obstruction of an officer, and attempted interference with government property. Arnold appeals, challenging the sufficiency of the evidence, the trial court's jury instructions, and the court's failure to grant a mistrial due to purportedly inadmissible character evidence and impermissible closing argument. For reasons that follow, we affirm.

1. In two enumerations of error, Arnold asserts that the evidence is insufficient to support the jury's verdict finding him guilty of child molestation and felony obstruction of an officer. In reviewing these assertions, we do not weigh the evidence or determine witness credibility.[1] Instead, we review the evidence presented at trial in the light most favorable to support the jury's verdict and determine whether this evidence is sufficient to authorize a rational trier of fact to find Arnold guilty of each element of the charged offenses beyond a reasonable doubt.[2]

(a) Viewed in this light, the evidence supporting Arnold's conviction for child molestation shows that the victim was eight-year-old H. C. On the afternoon of the incident, H. C. walked home from school to the apartment where she lived. Finding the front door locked and nobody home, H. C. went to a pay phone in the apartment complex to call her mother. A man, later identified as Arnold, was using the phone. When Arnold finished, H. C. approached the phone to call her mother, but realized she had no change. Arnold gave H. C. money to make the call, then stood in the doorway of a nearby apartment. The pay phone, however, would not accept the coins, and H. C. returned the money to Arnold, who remained in the doorway.

After H. C. gave the money to Arnold, he began asking her questions about her family. Arnold then asked H. C. if she wanted to use his phone. H. C. declined, and Arnold asked her if she wanted to come in his apartment. H. C. again declined, and Arnold, still standing in the doorway, asked her if she wanted to see something. Curious about what Arnold would show her, H. C. acquiesced. Arnold then

---

[1] See *Russell v. State*, 230 Ga. App. 546, 549 (4) (497 SE2d 36) (1998).
[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

put a hand on his genitals, unbuckled his belt, and unzipped his pants. According to H. C., she "turned around when [Arnold] had got finished unzipping his pants because [she] knew what was going — what he was going to do." Although Arnold told H. C. to turn back around to see him, she refused until she heard him zipping his pants back up and buckling his belt. H. C. testified that Arnold asked her if she "want[ed] to see it again" and that he "started unzipping and unbuckling his pants." When H. C. realized what Arnold was doing, she turned away again, and he asked her if she knew anything about sex. Arnold then informed H. C. that her mother's car had just pulled up and told her not to tell her mother what happened. H. C. ran home and told her mother what occurred.

H. C.'s mother immediately went to the apartment and confronted Arnold, who was wearing a bandanna on his head. According to H. C.'s mother, Arnold "acknowledged it, but he said it was someone else, and that he had cursed them out, told them that they were wrong, and that they shouldn't have done it." H. C.'s mother suspected that Arnold was the culprit and asked him to wait for H. C. to come to the apartment to allay her suspicion. H. C.'s mother testified that Arnold "got real nervous," said he had to use the bathroom, and closed the door.

Still trying to determine whether Arnold was the culprit, H. C.'s mother asked H. C. whether the man was wearing a bandanna on his head. When H. C. confirmed that he was, her mother called the police.

After speaking with H. C.'s mother, the two responding officers, Charles Curl and J. J. Mack, went to Arnold's apartment. Officer Curl testified that when they questioned him about the incident, Arnold offered the following explanation:

> He was coming out of the bathroom. His genitals were still out of his pants. . . . He was adjusting himself, putting his penis back in his pants, walking through the living room area of the apartment, when he looked over at the doorway, which was open, and the child was standing in his doorway, and that the child had seen his penis. But it was all innocent, accidental.

Arnold did not testify at trial, but he presented testimony from an expert forensic psychologist specializing in sexual deviancy. The psychologist rendered his opinion that Arnold's motivation in exposing himself was not sexual gratification. Instead, the psychologist testified that Arnold's conduct "would be a classic example of someone who was trying to assume a position of power and frighten an unsuspecting person by exposing part of their body that is not nor-

mally exposed. So that would be a classic example of an exhibition-ist."

Arnold asserts that these facts are insufficient to support the jury's verdict "because the victim never saw his penis or [saw him] touch[ ] himself inappropriately." We disagree.

Under Georgia law, "[a] person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[3] Although a strict construction of this statute requires that the perpetrator perform the immoral or indecent act in the child's presence,[4] we are aware of no authority which requires the child to observe the entire act. Here, the evidence showed that the victim observed Arnold put his hand on his genitals and begin disrobing. And Arnold, in his explanation to the investigating officers, acknowledged that he touched his exposed penis in the child's presence, though he asserted he was merely adjusting himself after using the bathroom. Although the evidence showed that Arnold was unsuccessful in his attempt to coax H. C. to look at his exposed penis, his conduct is rendered no less culpable by the victim's good judgment in turning her head away.[5]

Furthermore, whether Arnold's intentions were innocent as he asserted to the officers, or that of an exhibitionist as stated by his expert, or to arouse his own sexual desires as found by the jury, was

> peculiarly a question of fact for determination by the jury and even when a finding that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak . . . the verdict will not be set aside on that ground. Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this.[6]

The jury was permitted to infer sexual intent from Arnold's conduct, including his encouragement for H. C. to look at him and his query about her sexual knowledge.

Finally, contrary to Arnold's assertion, the jury was not required

---

[3] OCGA § 16-6-4 (a).

[4] See *Vines v. State*, 269 Ga. 438, 439-440 (499 SE2d 630) (1998).

[5] See *Grimsley v. State*, 233 Ga. App. 781, 784 (1) (505 SE2d 522) (1998) (court found evidence sufficient even though children left room when parents began having sexual intercourse in their presence).

[6] (Punctuation omitted.) Id. See also *Blanton v. State*, 191 Ga. App. 454, 455 (1), (2) (382 SE2d 133) (1989) (whether defendant had requisite intent was for the jury to determine, despite expert testimony that defendant was an exhibitionist).

to find that he touched himself inappropriately. The act of intentionally exposing his penis in the child's presence to satisfy his own sexual desires was sufficient to support the jury's verdict.[7]

(b) Arnold also asserts that the evidence was insufficient to support the jury's verdict that he is guilty of felony obstruction of an officer. Viewed in a light most favorable to support the jury's verdict, the evidence shows that while questioning Arnold, Officer Curl requested a computer check of his name from the dispatcher. The computer check revealed an outstanding felony warrant. Upon learning of the warrant, the officers handcuffed Arnold and placed him in a patrol car. Once in the car, Arnold became belligerent and began kicking the car window. When Arnold ignored Officer Mack's request to stop kicking the window, Officers Mack and Curl removed him from the car. During their attempts to restrain Arnold, he became aggressive and threatened Officer Mack. Arnold stated that "if he saw [Officer Mack] again, he was going to pop a cap in his ass." Officer Curl testified that Arnold's threat is street slang for shooting somebody. Based on this threat, Arnold was indicted for felony obstruction of an officer.

The felony offense of obstructing or hindering law enforcement officers is defined by OCGA § 16-10-24 (b), which provides that "[w]hoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his official duties by offering or doing violence to the person of such officer . . . is guilty of a felony." Where, as here, the offense is grounded on verbal acts, the "[s]peech must reasonably be interpreted as a threat of violence in order to constitute an offer of violence under OCGA § 16-10-24 (b)."[8] The interpretation of the speech is a task for the jury.[9] Viewing the evidence that Arnold threatened to shoot an arresting officer in a light most favorable to support the jury's verdict, we find that it was sufficient to authorize a rational trier of fact to find him guilty of felony obstruction beyond a reasonable doubt.[10]

2. In addition to challenging the evidence supporting his conviction for felony obstruction, Arnold asserts that the trial court erred by refusing to charge the jury on the lesser included offense of misdemeanor obstruction. In response, the State asserts, among other argument, that the trial court did not err because Arnold never requested the charge in writing. The State has obviously neglected to

---

[7] See *Wilhelm v. State*, 237 Ga. App. 682, 683-684 (1) (516 SE2d 545) (1999); *Hathcock v. State*, 214 Ga. App. 188, 190 (2) (447 SE2d 104) (1994); *Blanton*, supra.

[8] *Animashaun v. State*, 207 Ga. App. 156, 159 (1) (427 SE2d 532) (1993).

[9] See *Duke v. State*, 205 Ga. App. 689, 690 (423 SE2d 427) (1992); *Sapp v. State*, 179 Ga. App. 614, 615 (1) (347 SE2d 354) (1986).

[10] See *Animashaun*, supra at 157, 159 (evidence sufficient where defendant threatened that " 'the first officer that comes in will have his head broken open' ").

refer to Arnold's trial transcript citation which includes a six-page colloquy during which counsel and the trial judge discussed the propriety of Arnold's written request to charge on the lesser included offense of misdemeanor obstruction. Likewise, the State's argument disregards Arnold's written charge request on misdemeanor obstruction, also contained in the record. Though we are troubled by the State's failure to review the record, we nonetheless find no error in the trial court's refusal to give the requested charge.

The general rule is that a trial court must give a written request to charge a lesser included offense if there is any evidence that the defendant is guilty of the lesser offense.[11] A corollary to this rule, however, is that "[w]hen the evidence shows completion only of the greater offense, it is unnecessary for the trial court to charge on the lesser offense."[12]

In this case, Arnold was indicted for felony obstruction based solely on his threat to "pop a cap in [the officer's] ass." The jury necessarily interpreted Arnold's declaration as a threat of violence. If, as Arnold asserts, the jury interpreted his speech as just "nonsense," and not a threat, then the speech would not be censurable under OCGA § 16-10-24 as either a misdemeanor or a felony. This is because "[t]o argue with, curse loudly at, [or] verbally interrupt a police officer while making the arrest of another does not constitute obstruction of a police officer."[13] Because the undisputed evidence at trial showed that Arnold completed only the greater offense of felony obstruction, or no crime at all, the trial court did not err in refusing to charge the jury on misdemeanor obstruction.[14]

3. Arnold asserts that the trial court erred in failing to grant a mistrial because the State impermissibly placed his character in evidence. The record shows that Arnold moved in limine to exclude evidence that he was on probation at the time of his arrest. During argument on the motion, Arnold's counsel elaborated that the State should be prohibited from eliciting testimony identifying either the specific offenses underlying his probation or the fact that he was arrested on a probation warrant. The trial court ruled that the State would be limited to presenting evidence that Arnold was arrested on an "outstanding warrant." During the trial, however, the assistant district attorney was attempting to establish who handcuffed Arnold, and in his response the testifying officer stated that the computer check revealed a *"felony* outstanding warrant. That's the reason he was placed into handcuffs at the time."

---

[11] See *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990).

[12] *Jenkins v. State*, 270 Ga. 607, 608 (2) (c) (512 SE2d 269) (1999).

[13] *Ballew v. State*, 245 Ga. App. 842, 844 (1) (538 SE2d 902) (2000).

[14] See *Jenkins*, supra.

Arnold did not object or move for a mistrial at the time, but in his motion for a new trial argued that the trial court erred in failing to grant a mistrial based on the officer's reference to a *"felony* outstanding warrant." We disagree.

On appeal,[15] we will not disturb a trial court's ruling on a motion for mistrial absent an abuse of discretion.[16] Here, we note that the testifying officer did not mention the specific offenses underlying the warrant or that Arnold was on probation, which were the specific objections raised in his motion in limine.[17] In addition, it is clear that the witness's testimony was unresponsive to the State's question.[18] Finally, as a general rule all circumstances surrounding an arrest are generally admissible.[19] For these reasons, we conclude that the trial court did not abuse its discretion in failing to grant a mistrial.

4. Arnold asserts that the trial court erred in failing to grant a mistrial based on the State's impermissible closing argument.[20] The record reveals that during closing argument, defense counsel argued that Arnold's threat to Officer Mack that he was going to "put a cap in his ass," was merely a "spontaneous" statement that Arnold made "without meaning it." Addressing this argument, the assistant district attorney stated in closing argument:

People just say things. They don't mean them. So let's not take them seriously. I'm going to shoot you. Well, you're just saying that. I won't take it seriously. I'm just going to kill your parents. Well, we won't take that seriously. I am just going to plant a bomb in your school.

The trial court denied Arnold's motion for a mistrial based on this allegedly inflammatory and prejudicial argument.

---

[15] We note initially that it is questionable whether Arnold preserved his objection for appeal. Even if we apply the rule that a motion in limine preserves an issue for appeal without a contemporaneous objection at trial, see *Reno v. Reno*, 249 Ga. 855 (1) (295 SE2d 94) (1982) (contemporaneous motion for mistrial not required where motion in limine was granted preserving issue for appeal); *Jordan v. Johnson*, 223 Ga. App. 875, 877-880 (479 SE2d 175) (1996) (Birdsong, P. J., concurring specially, joined by Blackburn, J.) (stating that it is unnecessary to object or move for mistrial where motion in limine was granted to preserve issue for appeal), "this rule cannot be invoked to preserve a different, if perhaps related, error." *Ward v. State*, 238 Ga. App. 540, 542 (2) (519 SE2d 304) (1999). Here, Arnold's motion in limine merely objected to the introduction of evidence identifying the specific charges underlying his probation and to references of a "probationary warrant." Arnold never objected to use of the phrase *"felony* warrant."

[16] See *Shabazz v. State*, 229 Ga. App. 465, 467 (2) (494 SE2d 257) (1997).

[17] See id.

[18] See *Johnson v. State*, 222 Ga. App. 722, 729 (11) (475 SE2d 918) (1996).

[19] See *Peeples v. State*, 234 Ga. App. 454, 457-458 (4) (507 SE2d 197) (1998).

[20] Because Arnold failed to object during or after closing arguments to one of the statements he relies on here, we will not review the propriety of that statement in this appeal. See *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996).

As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion.[21] In defining the outer limits of these boundaries, our Supreme Court in *Philmore v. State*[22] ruled:

It is not improper for a prosecutor to appeal to the jury to convict for the safety of the community . . . or to convict so as to send a message to others that criminal activities will not go unpunished. Moreover, the State may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard.[23]

In *Philmore*, the defendant was convicted of several drug-related offenses. The evidence showed that the offenses were committed in a high-drug area and that the victim and almost every testifying witness were immersed in using or selling drugs. Arguing that the jurors should not condone the illegal activities merely because they occurred under such circumstances, the prosecutor asked the jury:

What message do you send out there to the drug dealers in this community when you let drug dealers go because of that? You tell them it's a free pass . . . you tell them they can do their business without interference, without interruption, that they can do whatever they want as long as they do it in their place. Well . . . today it's the Original K, tomorrow it could be the courthouse, the day after that it could be our schools.[24]

The argument at issue here conveyed a similar message: that the community needs to take seriously all threats of substantial violence against its residents and institutions. By referring to other situations, the prosecutor was merely impressing upon the jury that one who threatens to shoot a police officer must be punished and that the failure to heed his advice could have drastic consequences. While we do not condone such argument, under these circumstances, we find no abuse of the trial court's discretion in denying Arnold's motion for mistrial.

5. In his final enumeration of error, Arnold asserts that the trial court erred by instructing the jury that it must unanimously decide that he is not guilty of child molestation before considering whether

---

[21] See *Allen v. State*, 210 Ga. App. 447, 450 (4) (436 SE2d 559) (1993).
[22] 263 Ga. 67 (428 SE2d 329) (1993).
[23] (Citations and punctuation omitted.) Id. at 69 (3).
[24] Id.

he is guilty of the lesser included offense of public indecency. Arnold misconstrues the court's instructions.

The record shows that during a recharge to the jury on the definitions of child molestation and public indecency, the trial court instructed the jury:

> The crucial issue for you to determine in regard to the facts is whether or not the act occurred, and whether or not it occurred with an intention to arouse or satisfy the sexual desires of either the defendant or the child. If you do not find that it was done with that intent it cannot be child molestation. Then you would consider the lesser included offense of public indecency as I have defined it to you. Those are factual determinations to be made by you, and then apply the law.

According to Arnold, this instruction required the jury to render a unanimous verdict on the child molestation charge before considering the public indecency charge.

A similar charge was recently reviewed by the Supreme Court in *Camphor v. State*.[25] In *Camphor*, the trial court instructed the jury: "Should you find the defendant not guilty of the crime of burglary, you would be authorized to consider under the evidence whether or not he did, at said time and place, commit the lesser offense of criminal trespass."[26] The Court distinguished this instruction from one given in *Kunselman v. State*,[27] which unequivocally *required* the jury to render a unanimous verdict on the greater offense before considering the lesser offense. In *Kunselman*, the trial court committed reversible error when it instructed the jury that " 'if you find the defendant not guilty of burglary, you would *then and only then* be authorized to consider the lesser included offense of criminal trespass.' "[28]

The charge at issue in this case is more akin to the charge affirmed by the Court in *Camphor*. Although the charge instructed the jury how to consider the evidence of each offense, it did not require the jury to unanimously find Arnold not guilty of child molestation before considering whether he was guilty of indecent exposure. Accordingly, we find no error in the court's charge.[29]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

---

[25] 272 Ga. 408, 414-415 (6) (d) (529 SE2d 121) (2000).
[26] Id. at 414.
[27] 232 Ga. App. 323, 324 (1) (501 SE2d 834) (1998).
[28] (Emphasis in original.) *Camphor*, supra at 415 (quoting *Kunselman*, supra at 324).
[29] See id.

DECIDED JANUARY 24, 2001 —
RECONSIDERATIONS DENIED APRIL 12, 2001.

*Lawrence W. Daniel,* for appellant.
*Patrick H. Head, District Attorney, Timothy B. Lumpkin, Dana J. Norman, Assistant District Attorneys,* for appellee.