A07A0181. HARPER v. THE STATE.
(645 SE2d 741)

JOHNSON, Presiding Judge.

A jury found Tyree Harper guilty of possession of cocaine with intent to distribute and giving a false name and date of birth to a law enforcement officer. He appeals from the convictions, challenging the sufficiency of the evidence to support the verdicts and the denial of his motion to suppress. Finding no error, we affirm.

1. In reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, we view the record in the light most

favorable to the verdict.[1] We do not weigh the evidence or determine witness credibility, but only determine whether the evidence was sufficient to enable any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.[2] As long as there is some competent evidence to support each fact necessary to make the state's case, we will uphold the verdict.[3]

Construed most favorably to the verdict, the evidence shows that the Woodstock Police Department received two 911 calls just after midnight regarding a domestic dispute at an extended-stay hotel. One call was from the hotel manager, and the other was from room 320 of the hotel.

Officer J. D. Stanfield responded to the dispatch. He went to the hotel office to speak with the manager, then went to room 320. Stanfield noticed two men standing outside the room. Although he had expected to find "two people arguing," the men were just standing there when he arrived. A box containing personal items was on the ground next to the men.

Stanfield approached the men and asked them what was going on. One of the men, Harper, stated that he just wanted to get his things from inside the room and leave. Two more officers responding to the "possible domestic dispute and unwanted guest" dispatch arrived on the scene. Stanfield knocked on the hotel room door. A woman and her son were inside. Stanfield went inside the room and talked to the woman. She told Stanfield she "was just tired of [Harper], and wanted him gone." Stanfield told her that "the gentleman outside" said he had some personal items in the room, and that the sooner Stanfield could retrieve the items, the sooner he and the man outside would be "out of her hair." The woman gave Stanfield three bottles of cologne, which he took outside.

Stanfield remarked that the woman said that those were the only items of his in the room, and that he was placing the bottles in the box. Stanfield believed Harper said, "Okay." Stanfield then asked the men for identification. One man handed Stanfield a driver's license. Harper stated that he had no identification, but told Stanfield his name was Joey Harper and his date of birth was June 14, 1964. When Stanfield asked for his middle name, Harper said he had none.

Stanfield checked Harper's information in the police database. Based on the results, Stanfield asked Harper again for his date of birth. This time Harper gave his date of birth as August 21, 1963. Stanfield ran a second check, and again asked Harper for his full

[1] *Hazelwood v. State*, 265 Ga. App. 709 (595 SE2d 564) (2004).

[2] Id. at 710.

[3] Id.

name and date of birth. Harper replied that his full name was Joey J. Harper and his birth date was August 24, 1963. Stanfield remarked that he thought Harper had no middle name. Harper denied having said that. Given the results of the latest database check, Stanfield asked for Harper's social security number. Harper gave him a number, but hesitated before stating the last two numbers. Upon checking the number, Stanfield asked another officer to place Harper under arrest for giving false information.

While searching Harper incident to the arrest, officers found in his jacket pocket a plastic sandwich bag containing seven smaller plastic bags filled with suspected crack cocaine and a second plastic sandwich bag containing twenty-five small bags of suspected crack cocaine. Officers found another small plastic bag containing suspected cocaine on the ground between Harper's feet. In all, officers found in Harper's possession 12.12 grams of the substance, which later tested positive for cocaine. They also found $861 cash in his pants pocket.

(a) *False name and date of birth.* OCGA § 16-10-25 makes it unlawful for any person to give a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties. Harper does not challenge the sufficiency of the evidence to support the finding that he gave the officer false information, just the sufficiency of the evidence to prove the officer was lawfully discharging his official duties at the time he asked Harper for identification. Harper argues that Stanfield was not discharging his official duties at the time because the officer lacked an articulable suspicion that he was or was about to be engaged in criminal conduct. The argument is without merit.

It is true that an officer is not within the lawful discharge of his official duties within the meaning of OCGA § 16-10-25 when he approaches and questions an individual without specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.[4] However, a dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report.[5] We note that this Court has recognized that a law enforcement officer has

---

[4] See *Overand v. State,* 240 Ga. App. 682, 683 (1) (523 SE2d 610) (1999); *Holt v. State,* 227 Ga. App. 46, 48 (487 SE2d 629) (1997) ("lawful discharge of official duties" requirement of OCGA § 16-10-24 (obstruction) is analogous to that of OCGA § 16-10-25 (false information)).

[5] *Overand,* supra.

a duty to maintain the peace, and that he is lawfully discharging his official duties when attempting to defuse what could become a violent confrontation.[6]

In this case, police received two reports of a domestic dispute involving this particular hotel room. Upon arriving on the scene, Stanfield saw two men standing outside of the hotel room and, through his brief encounter with Harper, confirmed that there was a dispute continuing between Harper and the woman inside the room concerning Harper's property and whether he would leave the premises. Harper was undisputedly one of the parties to the disturbance.

As Stanfield returned the items to Harper, he asked Harper for his name because it is "standard practice for us to identify the people that we come in contact with," and "when we have encounters like that . . . we are to get identification and run those individuals." On cross-examination, Stanfield explained that he did not ask for identification from every person he encountered that night, just the parties involved in the domestic dispute. Stanfield added that he did not ask the woman for identification because he already knew her, nor did he ask for identification from her sleeping son.

Stanfield testified that when he asked the men for identification, the domestic call was not over. It would have been over, in his opinion, once Harper left the premises, since the situation "still could have escalated." Under the circumstances presented here, the officer's official duties in responding to the disturbance calls and maintaining the peace reasonably included identifying the parties to the dispute, including one to whom he had just given property, and ensuring that the situation was resolved before he left the premises.[7] A jury could have reasonably found from the evidence presented that Stanfield was lawfully discharging his official duties when he asked Harper for identification.[8]

The cases upon which Harper bases his argument that Stanfield was not engaged in the lawful discharge of his official duties are distinguishable. For instance, *Holt v. State*[9] involved an officer asking for identification from passengers in a car after he completed the only tenable object of his investigation, which was issuing the driver a citation for driving with a cracked windshield. In that case, we noted that the officer's desire to keep names of suspicious persons

---

[6] See *Animashaun v. State*, 207 Ga. App. 156, 158 (1) (427 SE2d 532) (1993) (off-duty police officer acted within official duties when he and others accompanied woman to her home to retrieve belongings in effort to avert possible violent reaction from husband).

[7] See generally *Vaughn v. State*, 197 Ga. App. 561, 561-562 (398 SE2d 836) (1990) (physical precedent only).

[8] See generally *Overand*, supra at 683.

[9] 227 Ga. App. 46 (487 SE2d 629) (1997).

in his notepad might have been a good practice, but where the practice was not supported by articulable suspicion of criminal activity, it was not constitutionally justified. In *In the Interest of J. T.*,[10] the appellant was charged with obstruction for riding away on a bicycle and not stopping when ordered to do so by an officer, though the officer had no lawful basis for stopping him. In *Wagner v. State*,[11] there was no indication as to why the officer was called to a restaurant, or why he asked the defendant to step outside and identify himself. Finally, in *Duke v. State*,[12] which involved the denial of a motion to suppress, an officer stopped a car based solely on a 911 dispatch generally alleging suspicion of drug activity.

In this case, the officer asked Harper for identification before he completed investigating the reports of a domestic dispute — a dispute in which Harper was a party seeking the return of his property before he would leave the premises. While there was evidence that the parties were not arguing at the moment the officer arrived, and that it was the officer's "standard practice" to identify people he came in contact with, there was also evidence that Harper (as a party to the dispute, and as a party who received property from the officer) was more than just a person the officer casually came in contact with, and that the domestic incident was not "over" at the time he asked Harper for identification. The evidence was sufficient to support the verdict.

(b) *Possession of cocaine with intent to distribute.* Harper contends the circumstantial evidence was insufficient to support a finding that he intended to distribute the cocaine. We disagree.

While the mere possession of cocaine will not support a conviction for possession with intent to distribute, the state may use circumstantial evidence to prove intent to distribute.[13] No bright line rule exists regarding the amount or type of evidence sufficient to support a conviction for possession with intent to distribute.[14] Intent to distribute may be shown in many ways, including through evidence of the manner in which the drugs are packaged, the amount of drugs, and the amount and denominations of cash.[15]

Harper had in his pockets a large amount of cash, including 24 $20 bills, and 12.12 grams of cocaine divided into 33 individual

---

[10] 239 Ga. App. 756, 758 (521 SE2d 862) (1999).

[11] 206 Ga. App. 180, 181-182 (424 SE2d 861) (1992).

[12] 257 Ga. App. 609 (571 SE2d 414) (2002).

[13] *Copeland v. State*, 273 Ga. App. 850, 854 (2) (616 SE2d 189) (2005).

[14] See *James v. State*, 214 Ga. App. 763, 764 (1) (449 SE2d 126) (1994).

[15] See *Helton v. State*, 271 Ga. App. 272, 275 (b) (609 SE2d 200) (2005); *Womble v. State*, 203 Ga. App. 107 (416 SE2d 148) (1992) (appellant possessed sixteen small bags of crack cocaine); *Bowers v. State*, 195 Ga. App. 522 (1) (394 SE2d 141) (1990) (appellant possessed four small bags of crack cocaine).

packages. Stanfield, who had been involved in thousands of drug arrests in his 18-year career, testified that the small bags of crack cocaine ordinarily sell for $20 each. Construing the evidence to support the verdict, as we must, we conclude that the state presented sufficient evidence from which the jury could find beyond a reasonable doubt that Harper possessed the drugs with the intent to distribute them.[16]

2. Harper contends the trial court erred in denying his motion to suppress evidence seized during his encounter with police. At the suppression hearing, he urged that the officer engaged him in a second-tier encounter and that he was not free to leave, though the officer lacked a reasonable articulable suspicion of criminal activity. In his appellate brief, however, Harper abandons the "second-tier" argument and urges instead that the evidence should have been suppressed because the state failed to show that the officer was in "lawful discharge of his official duties" when questioning him. Because this argument is being raised for the first time on appeal as a basis for evidence suppression, it is not reviewable.[17]

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MAY 8, 2007.

*Dyer & Rusbridge, Jordan J. Hendrick*, for appellant.
*Garry T. Moss, District Attorney, Lawton W. Scott, Assistant District Attorney*, for appellee.

---

[16] See *Dent v. State*, 233 Ga. App. 605, 606 (1) (506 SE2d 641) (1998).
[17] See *Thomas v. State*, 253 Ga. App. 866, 870 (2) (560 SE2d 745) (2002); *Bellamy v. State*, 243 Ga. App. 575, 578-579 (1) (530 SE2d 243) (2000).