**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 16, 2016**

# In the Court of Appeals of Georgia

A15A2400. PROPHITT v. THE STATE.

BRANCH, Judge.

An Echols County grand jury indicted Jason Prophitt on a single count of child molestation. A jury found Prophitt guilty of this crime, and Prophitt now appeals his conviction, arguing that the evidence was insufficient to convict him of child molestation. For reasons explained more fully below, we agree with Prophitt, and we therefore reverse his conviction.

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702 SE2d 747) (2010). So viewed, the record shows that in November 2012, Prophitt was living with his then-wife, Sonya, and the couple's daughter, V. P., who at the time

was ten years old. During the week of Thanksgiving 2012, V. P.'s friend, C. D., was spending the night at the Prophitt home. After his wife went to bed, Prophitt told the girls that each of them had to shower before going to bed, and that whoever took the longest shower would get a prize. There was only one bathroom in the house, and on the evening in question there was no shower curtain in place. According to both V. P. and C. D., Prophitt told them that the curtain was dirty and was being laundered. Each girl also testified that Prophitt instructed her to shower while facing the door to minimize the amount of water that would spill on to the floor.

During the time C. D. was in the shower, Sonya Prophitt woke up and heard crying coming from behind her daughter's bedroom door. When Sonya went to check on V. P., she learned that her daughter was upset because Prophitt had made her go to bed and would not allow her to stay up and wait for C. D. to finish her shower. After Sonya left V. P.'s room, she went into the kitchen and discovered the back door standing open. Sonya went to the door and saw that the pants her husband had been wearing earlier in the day were on a table on the back porch, near the washer and dryer. Sonya then noticed that a piece of siding was off the house, near where the bathroom was located, exposing a large open area under the house. She retrieved a flashlight to investigate further, and when she bent down and shined the light into the

open area, Sonya saw Prophitt sitting on the ground, staring through a hole in the floor of the house. Prophitt's boxer shorts were down, he had his penis in his hand, and he appeared to be masturbating. When Sonya shouted at Prophitt, he pulled up his underwear and followed her into the house, telling her "that he was sick and . . . needed help."

Sonya called C. D.'s parents, who came and took C. D. home. Sonya then took V. P. and they drove to the home of friends, where Sonya called the police. Brian Hancock, a deputy with the Echols County Sheriff's Department, responded to Sonya's call and took a report of the incident in the early morning hours of November 25, 2012. That evening, Hancock accompanied Sonya to the family home to investigate the incident. At the house, Hancock observed a hole, approximately one inch long and one-half inch wide, in the floor of the bathroom. When Hancock arrived, there was a piece of cushion-like foam wedged in the hole, which Hancock found could be removed and replaced easily. According to Hancock, anyone looking through the hole from underneath the house would have a direct view of the shower.

Hancock also observed the open area underneath the house that was exposed when the siding near the bathroom was removed. Hancock stated that the ground directly beneath the hole looked different from the rest of the ground underneath the

3

house. Specifically, Hancock thought that the ground below the bathroom looked as though someone had been sitting there, and he observed what he described as a "butt print" on that part of the ground. The investigator from the sheriff's department who subsequently photographed the scene testified that the distance between the shower and ground below the hole in the shower floor was approximately seven to eight feet.

Following the police investigation, Prophitt was indicted on a single count of child molestation. The indictment alleged that Prophitt "committed an immoral and indecent act in the presence of [C. D.], a child under the age of sixteen (16) years . . . by fondling his penis and masturbating while watching said child take a shower through a hole in the bathroom floor [sic] . . . ." Following the close of the State's case at trial, Prophitt moved for a directed verdict of acquittal, arguing that the State had failed to prove that he had engaged in any immoral or indecent act in C. D.'s "presence." The trial court denied that motion, but noted that the question of whether a child's "presence" is established under circumstances such as those in Prophitt's case had not yet been decided by Georgia's appellate courts. The jury found Prophitt

guilty of the charged crime, and the trial court entered judgment on that verdict.[1] Prophitt now appeals his conviction.

Prophitt argues that the trial court erred both in denying his motion for a directed verdict of acquittal and in entering the judgment of conviction because the evidence was insufficient to convict him of child molestation. With respect to these claims of error,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In determining that question, we consider the inferences that can be logically derived from the evidence presented at trial. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*King v. State*, 325 Ga. App. 777, 781 (1) (755 SE2d 22) (2014) (citation and punctuation omitted). See also *Dorsey v. State*, 279 Ga. 534, 542 (3) (615 SE2d 512) (2005) ("[t]he standard for reviewing a denial of a motion for a directed verdict of

---

[1] The trial court sentenced Prophitt to 15 years, with the first six years to be served in incarceration and the balance to be served on probation.

5

acquittal is the same test to be used when the sufficiency of the evidence is challenged") (citations omitted).

Prophitt was charged with violating OCGA § 16-6-4 (a) (1), which provides that "[a] person commits the offense of child molestation when [he] [d]oes any immoral or indecent act *to* or *in the presence of* or *with* any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or [himself]." (Emphasis supplied.) The question in this case is whether Prophitt, who had situated himself outside of and underneath the house where C. D. was showering, was "in the presence of" C. D. at the time he engaged in his immoral or indecent acts. As the parties acknowledge in their briefs, there are a limited number of cases that have addressed the question of when a defendant is "in the presence of" a child, as that term is used in OCGA § 16-6-4. The only case in which the Supreme Court of Georgia has addressed this issue, *Vines v. State*, 269 Ga. 438 (499 SE2d 630) (1998), considered whether the child molestation statute could apply to an adult's conduct in engaging in a sexually explicit telephone conversation with an adolescent. The court concluded that such conduct was not prohibited by OCGA § 16-6-4, finding that the statute's requirement that an immoral or indecent act be done to, with, or in the presence of a child meant "that the victim and accused must be together in order for

the crime of 'child molestation' to be committed." *Vines*, 269 Ga. at 439. In reaching this conclusion, the court noted that an accused and an alleged victim "necessarily are together in order for an immoral or indecent act, such as exposure by the accused, to be committed 'in the presence' of the child." Id. The court therefore reversed the defendant's conviction under OCGA § 16-6-4, finding that child molestation could not occur where "the only contact between the accused and the alleged victim was by telephone." Id. at 438.

A decade later, this Court applied *Vines* and held that the defendant's use of a webcam to provide live images of himself masturbating to what he believed was a 15-year-old girl did not constitute child molestation, as the defendant was not in the presence of the child when he engaged in the inappropriate conduct. *Selfe v. State*, 290 Ga. App. 857, 860-861 (1) (660 SE2d 727) (2008), disapproved in part on other grounds, *Gordon v. State*, 334 Ga. App. 633 (780 SE2d 376) (2015). Noting that the accused and the victim were in separate locations at the time the transmission occurred, we concluded that the State could not show that the accused was in the presence of the child. *Selfe*, 290 Ga. at 861 (1).

In a series of cases, this Court has made clear that the presence element of child molestation is satisfied where the accused and the victim were in close physical

proximity (such as in the same room or on the same piece of furniture) and the defendant was aware of the child's presence at the time he committed the immoral or indecent act at issue. See *Clemens v. State*, 318 Ga. App. 16, 21 (3) (733 SE2d 67) (2012) (defendant was in the presence of the child when he entered and masturbated in the same bed in which the victim was sleeping and it appeared as though he was rubbing his genitals on the child); *Jordan v. State*, 317 Ga. App. 160, 164 (1) (b) (730 SE2d 723) (2012) (defendant committed an immoral and indecent act in the presence of a child when he watched pornography in a room during the time the victim was wandering in and out of the room; the defendant was aware that the child was coming into and out of the room and he was therefore aware of the victim's presence in the room during some of the time he was watching pornography); *Klausen v. State*, 294 Ga. App. 463, 465 (1) (669 SE2d 460) (2008) (presence element of child molestation statute satisfied where defendant masturbated while sitting on sofa and there was some evidence from which jury could infer that defendant was aware child was sitting on the opposite end of the sofa); *Arnold v. State*, 249 Ga. App. 156, 158 (1) (a) (545 SE2d 312) (2001) (defendant who exposed himself while standing in doorway to his home, directly in front of the victim, while the victim remained outside and just over the threshold, was in the presence of the victim).

8

Moreover, in both *Clemens* and *Klausen*, we held that even though the alleged victim was or may have been unaware of the defendant's inappropriate conduct, that fact did not take the defendant outside of the child's presence. Instead, we found that the presence element was satisfied because the evidence showed that the defendant was aware of the child's physical proximity to him and proceeded to engage in the inappropriate conduct either in spite of or because of the child's presence. See *Clemens*, 318 Ga. App. at 21 (3) (defendant was in the presence of the child even though victim remained asleep as the defendant masturbated in her bed while kneeling over or next to her; the evidence showed that the defendant had deliberately chosen that location and the jury could infer that he did so because the child's presence helped to gratify his sexual desires, and the fact that child was unaware of defendant's conduct did not make that "conduct any less culpable under Georgia law"); *Klausen*, 294 Ga. App. at 465 (1) (the defendant's actions in masturbating while sitting on sofa and while aware that the child was sitting on the opposite end of the sofa were made "no less culpable because the child may not have been fully aware of what was occurring"). See also *Arnold*, 249 Ga. App. at 158 (1) (a) (affirming defendant's conviction for child molestation even though victim had turned her head to avoid seeing the defendant's genitals when he exposed himself;

9

"[a]lthough a strict construction of [the child molestation] statute requires that the perpetrator perform the immoral or indecent act in the child's presence, we are aware of no authority which requires the child to observe the entire act") (footnote omtted).

In its brief, the State relies on all of the foregoing cases to support its argument that Prophitt was in C. D.'s presence as he clandestinely observed her while fondling himself. Specifically, the State argues that although Prophitt was situated outside of and underneath the house, he was actually only seven to eight feet away from C. D. and was therefore in close physical proximity to her. Additionally, the State contends that the fact that C. D. was unaware of both Prophitt's presence and his conduct did not mean Prophitt was outside the child's presence. We agree with the State that C. D.'s lack of knowledge as to Prophitt's conduct would not take Prophitt out of C. D.'s presence if he was otherwise in immediate physical proximity to the child. What the State's argument fails to acknowledge, however, is that Prophitt and C. D. were not in each other's immediate physical presence. And that fact, together with C. D.'s lack of knowledge as to Prophitt's conduct, leads us to conclude that Prophitt was not in C. D.'s presence for purposes of OCGA § 16-6-4.

The only case in which we have found that the presence element of OCGA § 16-6-4 is satisfied despite the lack of immediate physical proximity between the

10

accused and the victim is *Rainey v. State*, 261 Ga. App. 888 (584 SE2d 13) (2003). In that case, the victim saw Rainey fondling himself as she exited her school bus. At that time, Rainey was standing in front of an open window at his house and he and the victim were approximately 200 feet apart. 261 Ga. App. at 888. The victim went to her house, reported the defendant's conduct to her mother, and then proceeded to a window with a view of Rainey's home. Id. At this point, the victim was approximately 100 feet away from Rainey. Id. at 889. When he saw the victim at her window, Rainey, who had been sitting away from the window in his home, stood and returned to that window wearing only a shirt. Id. He then proceeded to fondle himself and appeared to be masturbating, and at one point he stuck both his genitals and his hand outside of the window. Id. As the victim explained during her trial testimony, "it looked like [Rainey] wanted somebody to see or something." Id.

Rainey was subsequently convicted of child molestation for having committed an indecent or immoral act in the presence of a child. On appeal, Rainey argued that the physical distance between the victim and him meant that he was not in the presence of the victim at the time he engaged in the inappropriate conduct. We rejected that argument, finding "no basis to hold that there is a specific limit to how far away someone can be before they can no longer be considered to be 'in the

11

presence of" a child *where the child can see the person and the person is aware of the presence of the child*." Id. at 890 (1) (emphasis supplied). Thus, we affirmed Rainey's conviction, finding that the evidence supported the conclusion "that Rainey was aware of the victim's presence and that he sought to expose himself to her for the purpose of satisfying his own sexual desires." Id. In other words, the evidence showed that Rainey' s conduct was motivated, at least in part, by his knowledge both that the child was close enough to observe his obscene behavior and that the child was in fact observing that conduct.

Unlike any of the foregoing cases, the defendant and the victim in this case were not in each other's immediate physical presence; the victim was unaware that the defendant was in a position where he could observe her; and the victim was unaware either that the defendant was observing her or that he was engaging in sexual conduct while doing so. Under these circumstances, we must conclude that Prophitt was not in C. D.'s presence at the time he engaged in his obscene conduct.

As noted above, the Georgia Supreme Court has made clear that for child molestation to occur, the accused and the victim must be "together" at the time of the alleged crime. And as the foregoing cases demonstrate, for an accused and victim to be together, they must be in the same location – i.e., they must be in close enough

12

physical proximity that they each would at least have the opportunity to observe the other – regardless of whether the child actually does observe the defendant's conduct. See *Clemens*, 318 Ga. App. at 21 (3); *Klausen*, 294 Ga. App. at 465 (1); *Rainey*, 261 Ga. App. at 890; *Arnold*, 249 Ga. App. at 158 (1) (a).

Here, the evidence showed that although there may have been a distance of only seven to eight feet from the shower to the area under the house where Prophitt had situated himself, the relatively short distance did not place Prophitt in immediate physical proximity to C. D. Instead, there was a significant physical barrier between the two, in the form of the bathroom floor.[2] Thus, to be in C. D.'s immediate physical presence, it would have been necessary for Prophitt to crawl out from underneath the house, enter through the back door, walk down the hallway, and open the bathroom door.

Additionally, Prophitt made no effort to expose himself to C. D. or to make the child aware of his presence. To the contrary, Prophitt went to some lengths to secrete himself away from both the victim and the members of his household in a concerted effort to remain undetected. And given the size and location of the hole, it would have

---

[2] The record shows that the hole in question was not large enough to permit either Prophitt or C. D. to reach through it and that there was no other means of access from underneath the house into the bathroom.

13

been physically impossible for C. D. to see Prophitt while she was showering. Finally, the evidence showed that C. D. was not aware either that Prophitt was observing her or that he was engaging in an indecent act while doing so. Under these circumstances, we cannot say that Prophitt engaged in an immoral or indecent act while in the presence of C. D.

Our conclusion in this regard is reinforced by the fact that "[a]s a criminal statute, OCGA § 16-6-4 (a) must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted." *Vines*, 269 Ga. at 438-439 (citation and punctuation omitted). Two principles underlie this requirement of strict construction. First, when interpreting a criminal statute, courts must be mindful of the Due Process Clause, which forbids criminal statutes that are overly vague. See *Hall v. State*, 268 Ga. 89, 92-93 (2) (485 SE2d 755) (1997). Such vagueness may exist where the statute fails "to provide notice sufficient to enable ordinary people to understand what conduct it prohibits or requires," or where the statute is so vague that it could authorize or encourage the State to enforce it selectively. *Santos v. State*, 284 Ga. 514, 514 (1) (668 SE2d 676) (2008). Courts, therefore, must avoid interpreting criminal statutes so broadly that they create

14

vagueness concerns that would not exist if the statute were interpreted narrowly. Second, an overly-expansive interpretation of a criminal statute poses the possibility that the judicial branch will extend a particular code section to encompass conduct that the legislature did not intend to punish thereunder. A narrow construction of criminal statutes, therefore, allows us to avoid extending the operation of those statutes "by application of subtle and forced interpretations." *Perkins v. State*, 277 Ga. 323, 326 (2) (588 SE2d 719) (2003) (citation and punctuation omitted).

Construing a statute narrowly, in turn, requires that we read the code provision in question "according to the natural and obvious import of [its] language." Id. at 325 (2) (citation and punctuation omitted). See also OCGA § 1-3-1 (b) ("[i]n all interpretations of statutes, the ordinary signification shall be applied to all words"); *Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014) (when found in a statute, a commonly used word "must be given its ordinary meaning"). Thus, in determining the meaning of "presence," as used in the child molestation statute, we must afford that word its generally understood meaning. Put another way, "we must read the [word 'presence'] in its most natural and reasonable way, as an ordinary speaker of the English language would." *May v. State*, 295 Ga. 388, 391 (761 SE2d 38) (2014) (citation and punctuation omitted).

When looking for the generally understood or common meaning of a particular word, courts most often look to dictionary definitions. See, e. g., *Abdel-Samed*, 294 Ga. at 763 (2); *Warren v. State*, 294 Ga. 589, 590-591 (1) (755 SE2d 171) (2014). The Oxford English Dictionary defines presence as "[t]he fact or condition of being present; the state of being with or in the same place as a person or thing; attendance, company, society, or association." Compact Oxford English Dictionary, 1420 (2d Ed. 1991). Webster's Dictionary offers a similar definition, defining presence as "the fact of being in a particular place: the state of being present; the area that is close to someone; someone or something that is seen or noticed in a particular place, area, etc." http//www.merriam-webster.com/dictionary/presence. Finally, Black's Law Dictionary defines presence as "[t]he quality, state, or condition of being in a particular time and place, particularly with reference to some act that was done then and there[;] [or] [c]lose physical proximity coupled with awareness." Black's Law Dictionary, ___ (10th Ed. 2014). These definitions show that presence is commonly understood as referring to a person who is in the same place or location at the same time as another person or thing. This meaning, in turn, is the same one the Georgia Supreme Court afforded the term presence when it found that OCGA § 16-6-4 requires that the accused and the victim be together at the time of the alleged crime.

16

*Vines*, 269 Ga. at 439. Thus, applying both *Vines* and the commonly understood meaning of "presence," and complying with the requirement that we construe OCGA § 16-6-4 so as to limit criminal liability, we must conclude that Prophitt was not in C. D.'s presence when he engaged in the conduct at issue. In short, that conduct, while reprehensible, did not constitute child molestation.[3]

---

[3] We note that Prophitt's conduct could have subjected him to prosecution for criminal invasion of privacy. See OCGA § 16-11-62. The Code defines the crime of invasion of privacy to include a defendant's conduct in "go[ing] on or about . . . any private place . . . for the purpose of invading the privacy of others by . . . secretly observing their activities[.]" OCGA § 16-11-62 (3). The Code further defines "private place" as any place "where there is a reasonable expectation of privacy." OCGA § 16-11-60 (3).

The crime of invasion of privacy constitutes a felony, see OCGA § 16-11-69, and this Court has previously held that the conduct of a parent, guardian, or other adult in filming or observing a minor while the minor is in a state of undress in either her bedroom or bathroom violates OCGA § 16-11-62. See *Price v. State*, 320 Ga. App. 85, 86 (2) (738 SE2d 289) (2013) (affirming conviction of criminal invasion of privacy where evidence showed defendant had clandestinely videotaped his stepdaughter while she was nude in her bedroom); *Snider v. State*, 238 Ga. App. 55, 57-58 (1) (b) (516 SE2d 569) (1999) (evidence showing that father stood in backyard of family home while nude and holding his penis while attempting to observe his teenage daughter through her bedroom window as she undressed supported father's conviction for criminal invasion of privacy); *Kelley v. State*, 233 Ga. App. 244, 249 (2) (503 SE2d 881) (1998) (affirming conviction of teenager's legal guardian for criminal invasion of privacy where evidence showed guardian had photographed teenager after teen had passed out in the bathroom while nude). Unfortunately, the State declined to charge Prophitt with any crime other than child molestation.

17

In light of the relevant case law, and "[i]n accordance with the applicable rules of statutory construction," we must conclude that Prophitt was not in C. D.'s presence when he committed the indecent and immoral acts in question. *Vines*, 269 Ga. at 440. As a result, Prophitt's conduct "is not within the ambit of OCGA § 16-6-4 (a)." Id. Accordingly, we are constrained to reverse Prophitt's conviction for child molestation.

*Judgment reversed. Andrews, P. J., concurs. Miller, P. J., concurs in judgment only.*