**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 9, 2019**

# In the Court of Appeals of Georgia

A19A0311. HORTON v. THE STATE.

BROWN, Judge.

Darius Horton appeals from his convictions of aggravated assault on a police officer and five counts of obstruction of an officer. In his sole enumeration of error on appeal, he contends that plain error resulted from the trial court's failure to charge the jury, sua sponte, on his right to resist an unlawful arrest or excessive force. For the reasons explained below, we disagree and affirm.

The record shows that the incident leading to Horton's arrest began when Deputy Morris, a uniformed officer, received a dispatch around 6:15 p.m. to a specific address for a "physical domestic" in which "the suspect had a chain that he was using." He testified that

[a]s I was walking up to the residence, just like we do on every domestic, we take it slow and try listen for fighting, because I didn't know if the suspect and the victim was still in the residence, or if they were separated. So as I'm walking up to the door, I'm not hearing no arguing coming from the trailer, no sign of a domestic going on at that time. So I knocked on the front door, Mr. Horton come to the door with a chain around his neck, and as he come to the door the screen door was still closed, and I asked him to step out and talk to me for a minute.[1] And he stepped outside, I asked him several times just to lay the chain down on the ground, or on the porch, that way nothing would escalate from there with that. He refused to lay the chain d[o]wn.

Horton, who "was already agitated for some reason," ignored the officer's command and held the chain while telling the officer "there is no reason for [him] to be there and . . . his wife needed to come, get her a** back in the house because she had food burning on the stove." The officer asked him more than five times to put the chain down, and Horton refused, all the while yelling for his wife to come back in the house in a "loud and boisterous" manner. Horton also "attempted to go back in the residence several times, and every time that [Deputy Morris told] him not to, he would stop for

_____

[1] Deputy Morris explained to Horton that he was there because of a call about a domestic disturbance.

2

a second and then he would try again." At this point in time, two other officers arrived, Sergeant Philpott and Corporal Franklin.

> As these officers stepped onto the porch, Horton

> attempted to go back and he actually grabbed the door to go back in the residence. At that time [Deputy Morris] stepped over and put [his] hands and foot in front of the door so (sic) couldn't open it. And when [Horton] done that is when [Sergeant] Philpott asked [Horton] to move over to the other side of the porch. [Horton] yanked away from Sergeant Philpott and jumped across the porch and took an aggressive stance and pulled the chain from his shoulders and as he was pulling the chain, [Deputy Morris] deployed [his] taser [because he was afraid Horton was going to hit him with his chain].

When one of the taser probes failed to hit Horton, he stepped back, ripped the connected probe out, and then swung the chain at Deputy Morris. The chain wrapped around Deputy Morris' forearm and Horton "yanked it away." Corporal Franklin "tased" Horton again, Horton immediately ripped the cords out, and it took the three officers about five minutes to physically subdue and handcuff Horton. Deputy Morris had an imprint from the chain on his arm for about four weeks before it started to fade.

Corporal Franklin testified that it is routine practice in domestic calls to "isolate them in one area" because "we don't know what or who is in the house . . . we don't know if there's guns, knives, whatever in the house, so we like to keep them isolated if we can until we find out what's going on." Deputy Morris testified that he did not speak to Horton's wife, who had fled to a neighbor's home, until after Horton had been arrested and placed in a patrol car. Horton did not testify at trial.

On appeal, Horton asserts that the trial court committed plain error by failing to charge the jury that he had the right to resist an unlawful arrest, as well as a right to resist excessive force in a lawful arrest. He characterizes the omitted charges as ones involving his sole defense of justification.

> An appellate court may reverse a trial court for plain error if the instructional error was not affirmatively waived by the defendant, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

(Citations and punctuation omitted.) *Woodard v. State*, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015). In considering such a claim, "we examine the jury charge as a whole. [Cit.]" Id. Horton bears the burden of establishing plain error, and "as our

Supreme Court has emphasized, satisfying the plain-error standard is difficult, as it should be." *State v. Crist*, 341 Ga. App. 411, 415 (801 SE2d 545) (2017).

1. With regard to the obstruction charges, Horton cannot establish error, much less plain error, as the trial court instructed the jury that the State must prove beyond a reasonable doubt that the officers were "in the lawful discharge of official duties" at the time of Horton's obstruction. As the lawful discharge of an officer's duties was an essential element of the crime, rather than an affirmative defense, the charge as a whole adequately covered the principle. See *Curtis v. State*, 285 Ga. App. 298, 300-301 (1) (a) (645 SE2d 705) (2007); *Long v. State*, 261 Ga. App. 478, 479-480 (1) (583 SE2d 158) (2003); *Green v. State*, 240 Ga. App. 774, 775-777 (1) (525 SE2d 154) (1999).

2. We must analyze the issue differently with regard to the charge of aggravated assault on a peace officer premised upon Horton's conduct in hitting Deputy Morris with the chain. Unlike the offense of obstruction, aggravated assault upon a peace officer is not defined to require that the officer be engaged in the "lawful discharge of his official duties," OCGA § 16-10-24 (b), but instead requires the State to prove that the assault occurred when the officer "is engaged in, or on

5

account of the performance of, his or her official duties." OCGA § 16-5-21 (c).[2] See also *Curtis*, 285 Ga. App. at 301 (1) (b) (distinguishing between elements of obstruction and battery against a police officer). Accordingly, this charge can be subject to the affirmative defense that the defendant is resisting an unlawful arrest or excessive force. See *Curtis*, 285 Ga. App. at 301 (1) (b).

Horton contends in his brief that he was resisting an unlawful arrest or, in the alternative, excessive force, at the time he swung the chain at Deputy Morris. In his view, Deputy Morris' conduct in preventing him from going back inside his home constituted an unlawful arrest. We disagree. At the time Deputy Morris stopped Horton, he had not determined the location of Horton's wife or verified Horton's claim that she was not inside the home. "[A] dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report." (Footnote omitted.) *Harper v. State*, 285 Ga. App. 261, 263 (1) (a) (645 SE2d 741) (2007). In this case, Horton's appearance at the door with a chain around his neck corroborated the dispatcher's report of a

---

[2] As the events at issue took place on June 23, 2013, we apply the definition of crimes in effect at that time.

domestic situation in which the suspect was using a chain. Accordingly, the officer's conduct in preventing Horton from going back inside the home cannot be construed as an *unlawful* arrest or detention. See *Lightsey v. State*, 302 Ga. App. 294, 296 (2) (690 SE2d 675) (2010) ("law provides no right to resist a legal arrest"); *Williams v. Hudson*, No. 1:11-CV-3542-SCJ (N.D. Ga. August 12, 2013) ("officers are not required to forego their investigation simply because they receive an explanation from a person on the scene"). Similarly, we cannot say that the evidence in this particular case supported a charge on the right to resist excessive force where Deputy Morris discharged the taser in an attempt, albeit a failed one, to prevent Horton from hitting him with the chain. Because a charge on the right to resist an unlawful arrest or excessive force was not authorized by the evidence, the trial court did not commit plain error by failing to charge it sua sponte.[3] See *Jones v. State*, 242 Ga. App. 357, 359 (3) (529 SE2d 644) (2000).

*Judgment affirmed. Barnes, P. J., and Mercier, J., concur.*

---

[3] We note that the Supreme Court of Georgia recently granted a writ of certiorari to consider "[w]hat, if anything, must a criminal defendant admit in order to raise an affirmative defense." See *McClure v. State*, 347 Ga. App. 68 (815 SE2d 313) (2018), cert. granted *McClure v. State*, Case No. S18C1599; 2019 Ga LEXIS 117 (February 18, 2019) . As we are not deciding this case on that basis, the issue to be decided by the Supreme Court in *McClure* is not implicated here.